**GREAT OLYMPIC TIRE CO., Plaintiff-Appellee, Cross-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellant, Cross-Appellee.**

**No. 77–1469.**

United States Court of Appeals,
Fifth Circuit.

June 20, 1979.

Jamie C. Boyd, U. S. Atty., San Antonio, Tex., Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate Section, Jonathan S. Cohen, Atty., William A. Whitledge, Atty., M. Carr Ferguson, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant, cross-appellee.

Brice A. Tondre, Houston, Tex., for plaintiff-appellee, cross-appellant.

Before JONES, CLARK, and GEE, Circuit Judges.

GEE, Circuit Judge:

This case concerns the federal excise tax on rubber used in retreading automobile tires. It appears to be one of first or near-first impression and hence, though we agree with the disposition made below, we write briefly to explain our affirmance. Since the text of the statutes concerned lends itself to several interpretations, we have sought to follow that which we think expresses congressional intent. As to the prospective application of these taxes, at least, a consideration of almost equal importance to correctly divining that intent is that we should arrive at a clear and workable interpretation of these somewhat doubtful provisions.

First, a few facts. Taxpayer produces and markets retreaded tires. The first step in the manufacturing process is to get and clean a used-tire casing, buffing off the remaining original tread to ready it for the new. Next, new tread rubber—the subject of this tax—is applied to the tire surface by an extruding machine. Finally, the old casing and new rubber are placed in a curing mold, where heat bonds them together and imprints the new tread.

Tread rubber is wasted at several stages of this process, and the major question presented by this appeal is what, if any, of this wasted rubber should be taxed. Some of it is lost through accretions to the extruder head, some is ruined by scorching; the United States does not claim a tax on this rubber. It does, however, seek to tax that lost by application to tires that fail final inspection and to those destroyed by testing for quality control. The taxpayer resists and seeks as well to obtain a credit for rubber remaining on tires returned under warranty. It prevailed below, except as to the warranty items.

The statutory scheme imposes on manufacturers a tax of a nickel a pound on tread rubber used in retreading tires "of the type used on highway vehicles," exempting that used "otherwise." [1] The phrases quoted are critical. Obviously they exclude from taxation rubber used on tires unsuited for highway service, and this the government concedes. The difficulty arises as to tread rubber applied in confecting such a retreaded tire as would be "of the type used on highway vehicles" but which does not survive the manufacturing process. This may happen, as we note above, either when the tire does not come out right and fails inspection or when it is selected as a specimen for testing quality and destroyed by examination. Are these "of the type"? If so, the tread rubber used on them is taxable; "otherwise" it is not.

Both parties make arguments, among others, focussing on the time and place at which the condition of these tires is to be determined. The United States focusses on the extruder head. Here, it contends, is where the tread rubber is "used"; and if at this stage the partly confected recap is "of the type" from which a highway model can be made, the rubber on it is taxable. This interpretation is administratively feasible and probably economically so, as well; doubtless the tax on the wasted tire rubber

---

1. The relevant statutes are somewhat lengthy. We therefore set out their pertinent parts in an appendix rather than in the margin.

will simply—like the cost of these wasted tires themselves—be apportioned among the acceptable products as a cost of doing business. We cannot accept it, however. In the first place, at this second stage of the manufacturing process, the casing and rubber are simply not a tire at all, let alone one "of the type," etc. They may or may not become one; whether they will cannot be known for various reasons. One of these reasons, in the second place, is that whether the tire will be "of the type" is determined not at the second stage of the process but at the third, where the tread is imprinted. If at that stage the tire becomes a "racing slick," for example, it is not suitable for highway use, being given an essentially treadless configuration suitable for maximum traction on dry surfaces but not for general road use. The same is true of lug-type treads, designed for rough ground and mud but producing undesirable vibration at normal highway speeds. These considerations are, indeed, recognized by the government in a Revenue Ruling with which its present contentions appear to conflict.[2]

Taxpayer, on the other hand, seeks to focus on the tires in question—the defective and test specimens—as they exist after they have been found to fail inspection, or after testing in the case of the specimens. At this time their sidewalls are slashed to prevent their use. After this, they are manifestly not "of the type." The difficulty with this particular mechanical approach is that the specimen tires, at least, were unquestionably serviceable tires "of the type" on which tread rubber was "used" before the taxpayer deliberately destroyed them. Whether the defective tires were "of the type" before being slashed is more ques-

tionable, but some at least would doubtless have served their time, or part of it, without incident, like those returned under warranty after partial attrition of their treads by highway service.

■ Thus, neither time-focussed argument satisfies entirely. Nor does the statute specify any particular time in the process of manufacture—and surely inspection and testing are necessary parts of that process—at which we are to view the tires as "of the type" or as "otherwise." We are therefore driven behind the statutes' phraseology to the concerns that prompted them. What was Congress trying to do by its riddling reference to tires *of the type* used on highway vehicles? We conclude from the legislative history that it sought to measure the incidence of this tax as closely as is administratively feasible (and no closer) by actual wear and tear on the highways.

Representative portions of this history point in this direction, and we have found none indicating otherwise. The tax on tread rubber was enacted as part of the Highway Revenue Act of 1956, which created the Highway Trust Fund and allocated what committee reports of both houses called "highway user taxes" such as this fund. H.R.Rep.No.2022, 84th Cong., 2d Sess. 39 (1956–2 Cum.Bull. 1285, 1287); S.Rep.No.2054, 84th Cong., 2d Sess. 2 (1956–2 Cum.Bull. 1308, 1309); U.S.Code Cong. & Admin.News 1956, p. 2822. Not all taxes so allocated arise from actual highway use, but some do and all are on related uses—fuels, accessories, tires, etc. As to the tax under consideration, Congress recognized that *actual* use of a tire or retread on the highways was not a practical criterion, since actual use could not feasibly be

2. This reads in part as follows:

As indicated above, the tires recapped with "off-highway treads" are intended for off-highway use, and if they are used on the highway they will not perform with the efficiency to be expected from highway type tires. Accordingly, tires recapped with "off-highway treads" are not "tires of the type used on highway vehicles" within the meaning of the statute and regulations, and the exemption from the manufacturers excise tax

provided by section 4073(c) of the Code applies to tread rubber sold by the manufacturer, producer, or importer for use by the vendee in recapping or retreading such tires. It is immaterial that the tires resulting from the recapping or retreading may sometimes be mounted on the highway-type vehicles, or that the recapped tires were originally tires of the highway type.
Rev.Rul. 65–223, 1965–2 Cum.Bull. 420.

monitored. Hence, it adopted "of the type" in an effort to come as close to measuring the tax by actual use as was administratively feasible:

The additional tire tax and also the new tax on tread rubber have been restricted to tires of the type used on highway vehicles (or tread rubber for recapping these tires) because Title II of both the House and your committee's version of this bill is designed to raise revenue for a highway program. It is necessary to base the additional taxes on "tires of the type used on highway vehicles" because of the difficult administrative problems which would be involved in attempting to base the tax on the actual use to which the tires are placed. For example, it would not be possible to determine finally the use to which a tire might be placed until that tire was worn out since, although initially placed on a nonhighway vehicle, it could readily be transferred to a highway vehicle.

H.R.Rep.No.10660, 84th Cong., 2d Sess. (1956–2 Cum.Bull. 1312). Congress meant, then, to come as close to taxing only tread rubber used on the highways as it practically could. Bearing this principle in mind, we return to our case.

Tires destroyed in the manufacturing process never see and never wear on the roads. It is perfectly feasible, administratively, to exempt them and entirely consistent with one tenable reading of the statute: their sidewalls slashed at the end of the process, they are not "of the type." We conclude that rubber applied to them should not be taxed.

█ As for highway-type tires returned under warranty after partial use, an exemption for unused tire rubber remaining on them would also be consistent with the legislative intent that we divine. Indeed, it would be the interpretation of the statute most consistent with that intent. In addition, it would be consistent with the tax treatment of new tires so returned, on which a proportionate credit is allowed.

Nevertheless, we cannot adopt it. Such tires have actually been used on the high-ways. We cannot say that they are not "of the type"; they *are* of it, and they have been so used. The statute makes no reference to tires which are at one time "of the type" and at a later time are not. To be sure, the destroyed test specimens arguably fit this category; but these are destroyed in the course of the manufacturing process, and the statute seems, implicitly at least, to focus on that process. This has long ended by the time partly used tires are returned from actual service on the roads. Admittedly, a reading of the statute to allow a credit for tread rubber remaining on such returned tires is possible: at the time of their return for defects, they are no longer tires "of the type." But the statutes make no reference to tires that are partially "of the type" but not wholly. Weighing such indications of legislative intent as we have found against the language of the statutes, we do not feel warranted in going so far in the face of their terminology as such a result would require. If Congress concludes we have followed its statutory language too slavishly, it can change that language. We cannot.

AFFIRMED.

## APPENDIX

I.R.C. § 4071. Imposition of tax

(a) Imposition and rate of tax.—There is hereby imposed upon the following articles, if wholly or in part of rubber, sold by the manufacturer, producer, or importer, a tax at the following rates:

(1) Tires of the type used on highway vehicles, 10 cents a pound.

(2) Other tires (other than laminated tires to which paragraph (5) applies), 5 cents a pound.

(3) Inner tubes for tires, 10 cents a pound.

(4) Tread rubber, 5 cents a pound.

(5) Laminated tires (not of the type used on highway vehicles) which consist wholly of scrap rubber from used tire casings with an internal metal fastening agent, 1 cent a pound.

APPENDIX—Continued

I.R.C. § 4072. Definitions

(a) Rubber.—For purposes of this chapter, the term "rubber" includes synthetic and substitute rubber.

(b) Tread rubber.—For purposes of this chapter, the term "tread rubber" means any material—

(1) which is commonly or commercially known as tread rubber or camelback; or

(2) which is a substitute for a material described in paragraph (1) and is of a type used in recapping or retreading tires.

(c) Tires of the type used on highway vehicles.—For purposes of this part, the term "tires of the type used on highway vehicles" means tires of the type used on—

(1) motor vehicles which are highway vehicles, or

(2) vehicles of the type used in connection with motor vehicles which are highway vehicles.

I.R.C. § 4073. Exemptions

\* \* \* \* \* \*

(c) Exemption from tax on tread rubber in certain cases.—Under regulations prescribed by the Secretary or his delegate, the tax imposed by section 4071(a)(4) shall not apply to tread rubber sold by the manufacturer, producer, or importer, to any person for use by such person otherwise than in the recapping or retreading of tires of the type used on highway vehicles.

I.R.C. § 4218. Use by manufacturer or importer considered sale

(a) General rule.—If any person manufactures, produces, or imports an article (other than an article specified in subsection (b), (c), or (d) ) and uses it (otherwise than as material in the manufacture or production of, or as a component part of, another article taxable under this chapter to be manufactured or produced by him), then he shall be liable for tax under this chapter in the same manner as if such article were sold by him. . . .

I.R.C. § 6416. Certain taxes on sales and services

\* \* \* \* \* \*

(b) Special cases in which tax payments considered overpayments.—Under regulations prescribed by the Secretary or his delegate, credit or refund (without interest) shall be allowed or made in respect of the overpayments determined under the following paragraphs:

\* \* \* \* \* \*

(2) Specified uses and resales.—The tax paid under chapter 32 (or under section 4041(a)(1) or (b)(1) ) in respect of any article (other than coal taxable under section 4121) shall be an overpayment if such article was, by any person—

\* \* \* \* \* \*

(G) in the case of tread rubber in respect of which tax was paid under section 4071(a)(4), used or sold for use otherwise than in the recapping or retreading of tires of the type used on highway vehicles (as defined in section 4072(c) ), unless credit or refund of such tax is allowable under subsection (b)(3);