**TREADCO TIRES, INC.,**
Plaintiff-Appellee,

v.

**UNITED STATES of America,**
Defendant-Appellant.

No. 78–2560
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 5, 1979.

Rehearing Denied Nov. 5, 1979.

---

* 5th Cir. R. 18. *See Isbell Enterprises, Inc. v. Citizens Casualty Co.,* 431 F.2d 409, 410–414 (5th Cir. 1970).

Najjar, Najjar, Vincent, & Smith, Gary P. Smith, Denaburg, Schoel, Meyerson, & Ogle, Rodney A. Max, Ben Zarzaur, Birmingham, Ala., for plaintiff-appellee.

Robert E. Nagle, Washington, D. C., for Independent Tread Rubber Manufacturers Group, amicus curiae.

Before AINSWORTH, CLARK and VANCE, Circuit Judges.

VANCE, Circuit Judge:

Sections 4071, 4073 and 4218 of the Internal Revenue Code of 1954, 26 U.S.C. § 4071, 4073 and 4218, require manufacturers to pay an excise tax of $.05 per pound on tread rubber sold or used in retreading highway vehicle tires, but not on tread rubber used for other purposes. Taxpayer, a tire retreader, seeks a refund of taxes paid under these statutes. The district court held that taxpayer was not a manufacturer of tread rubber and was therefore entitled to a refund. We disagree.

Tread rubber is defined as any material that is "commonly or commercially known as tread rubber or camelback" or that substitutes for tread rubber or camelback and in retreading tires. 26 U.S.C. § 4072(b).[1] To produce camelback, a supplier forms rubber into a shape that fits a particular tire and places an adhesive on the underside of the rubber strip. The retreader who buys the camelback bonds it to a tire carcass. The supplier of camelback is its manufacturer and must pay the $.05 per pound excise tax.

An alternative method of retreading tires is also available. The supplier compounds the rubber, forms it into strips, and sells this strip stock to the retreader. The retreader feeds it into an extrusion machine

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, Appellate Sec., Ann Belanger Durney, William A. Whitledge, Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

---

1. Treas.Reg. § 48.4072–1 further defines "tread rubber" to include:

   strips of material wholly or partially of rubber, natural or synthetic, intended to be vulcanized or otherwise affixed to a tire casing to form the outside perimeter of the tire, smooth or treaded.

such as the Orbitread that heats it, shapes it into a continuous inch-wide rubber ribbon, attaches adhesive to it, and winds it directly around the buffed tire carcass. The retread is then vulcanized or bonded to the tire carcass.

A roll of camelback will fit only the particular type of tire for which it was made. Thus, the future use of any given roll can be substantially determined when the supplier sells the camelback to the retreader. Strip stock, however, can be used to retread both highway and off-the-road tires depending on the subsequent Orbitread processing the strip stock receives from the retreader.

In 1973, taxpayer stopped using camelback and began using strip stock and an Orbitread machine. The Commissioner in 1975 assessed $12,050.33 in taxes and penalties against taxpayer for the rubber used to retread highway type tires. Taxpayer paid the taxes and filed this action.

The district court's holding is contrary to the Commissioner's long-standing interpretation of the statute. In Revenue Ruling 65–75, 1965–1 C.B. 469–70, issued after Orbitread machines became widely used,[2] the Commissioner described the operations of rubber processing machines such as the Orbitread and stated,

> The rubber ribbon produced in the manner described above comes within the meaning of the term "tread rubber" as defined by section 4072(B)[(b)] of the Code and section 48.4072–1(B) of the regulations. Accordingly, it is held that, under the provisions of sections 4071(A)[(a)](4) and 4218(A)[(a)] of the Code, the recappers or retreaders are liable for the manufacturers excise tax on their sale or use of this tread rubber for the recapping or retreading of tires of the type used on highway vehicles.

The Internal Revenue Service (I.R.S.), has consistently applied this interpretation. *See Great Olympic Tire Co. v. United States,* 597 F.2d 449, 451 (5th Cir. 1979).

A governmental department's consistent interpretation of a statute that it administers is entitled to great weight. *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 210, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); *United States v. Fisher,* 353 F.2d 396, 399 (5th Cir. 1965). Although Revenue Ruling 65–75 has neither the force nor the effect of law, we find it convincing. *See Redwing Carriers, Inc. v. Tomlinson,* 399 F.2d 652, 657 (5th Cir. 1968). The Commissioner's interpretation accords with the statutory scheme and administrative practicality. Unlike the district court, we conclude that strip stock is not tread rubber within the meaning of 26 U.S.C. § 4072.

The statutory scheme imposes the excise tax on tread rubber or its substitute. In finding that strip stock constitutes a substitute for tread rubber, the district court erred because strip stock does not function in the same manner as tread rubber, which may be used immediately to retread tires. Strip stock requires further processing before it can be applied to a tire. Manufacturers of strip stock thus are not liable for the excise tax because § 4071(a)(4) does not apply to material used to make tread rubber or its substitutes. The tax applies only if the strip stock is further transformed into an appropriate substitute for tread rubber. This conversion occurs in the Orbitread process when the strip stock is ready, without further processing, to be applied to highway vehicle tires. Because strip stock may or may not become a substitute—e. g., it may be processed in the Orbitread machine to retread non-highway tires—the buyer who uses strip stock and an Orbitread machine to produce a retreaded highway tire is the manufacturer of tread rubber or its substitute liable for the § 4071(a)(4) tax. To hold otherwise would frustrate Congressional intent "to come as close to taxing only tread rubber used on the highways as it practically could." *Great Olympic Tire Co. v. United States,* 597 F.2d at 452. Further, the practical

---

2. The excise tax on tread rubber was passed as part of the Highway Revenue Act of 1956. *Great Olympic Tire Co. v. United States,* 597 F.2d 449, 451 (5th Cir. 1979). Orbitread machines were not being used to retread tires in 1956.

administrative benefits of the Commissioner's present practice are also considerable. At the time of sale, a supplier of strip stock cannot determine whether the strip stock will be used in a taxable or in a nontaxable way. The district court's holding therefore would require a supplier to pay excise taxes on all the strip stock it sells. To substantiate its claim for a 26 U.S.C. § 6416(b)(2)(B) refund, the supplier would then be required to obtain exemption certificates from the retreaders who bought the strip stock and to present the certificates to the Internal Revenue Service. Under the present I.R.S. practice, however, the retreader is taxed only on strip stock that has been processed in the Orbitread machine and is actually used in retreading highway vehicle tires. *See Great Olympic Tire Co. v. United States,* 597 F.2d at 450–51. Thus, we find that the retreader, not the supplier of strip stock, is the manufacturer of tread rubber and must pay the $.05 per pound excise tax on it. The judgment of the district court is therefore reversed, and the case is remanded for further proceedings.

REVERSED.