Alan WISHNER, on behalf of himself and all other employees of St. Luke's Hospital Center, similarly situated, Plaintiff,

v.

ST. LUKE'S HOSPITAL CENTER, Board of Trustees of St. Luke's Hospital Center, Pension Committee of St. Luke's Hospital Center Employees' Pension Plan and St. Luke's Hospital Center Employees' Pension Plan, Defendants.

No. 80 Civ. 6159 (HFW).

United States District Court,
S.D. New York.

Oct. 14, 1982.

Todtman, Epstein, Young & Goldstein, P.C. by Bruce H. Beckmann, New York City, for plaintiff.

Simpson Thacher & Bartlett by John W. Ohlweiler, Terri M. Solomon, New York City, for defendants.

## MEMORANDUM DECISION

WERKER, District Judge.

This is a class action [1] arising out of the disassociation of the Neighborhood Health Service Program ("NHSP") from defendant St. Luke's Hospital Center ("Hospital") and the resultant termination of the participation of 57 NHSP employees in the Hospital's pension plan. Plaintiffs seek a judgment declaring that the termination constituted a partial termination of the pension plan within the meaning of 26 U.S.C. §§ 401(a)(7) & 411(d)(3) and that plaintiffs are therefore entitled to payment of their vested interest in the plan as of the date of the termination. Jurisdiction is premised upon 29 U.S.C. § 1132(e)(1). The matter presently is before the court on defendants' motion for summary judgment.

## FACTS

Since the parties have stipulated that, for the purposes of this motion, no facts are in dispute, the matter is ripe for summary judgment. The relevant facts, as agreed to by the parties, are as follows.

NHSP is a community health care facility that provides out-patient health care services for its geographical area. Its major source of financing is the federal government. In order to receive federal grants, NHSP became affiliated with the Hospital in or about 1968. As a result, NHSP employees were placed on the Hospital payroll, and those who met the eligibility requirements of the pension plan became participants in the plan on the same basis as all other Hospital employees. NHSP reimbursed the Hospital for any payroll and pension benefits made by the Hospital for the benefit of NHSP employees.

In 1975, Congress passed an amendment to the Public Health Service Act that made it impossible for NHSP to receive federal funding as long as it continued its affiliation with the Hospital. *See* 42 U.S.C. § 254c(e)(3)(G). Thus, on or about May 7,

1977, NHSP severed its relationship with the Hospital, and all NHSP employees were removed from the Hospital's employ.

The Hospital plan is an "employee pension benefit plan" as defined in the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1002. Section 7 of the Hospital's pension plan sets forth the consequences of employment termination. According to section 7,

> [i]f a Participant's employment terminates (other than by retirement or death) after he has completed at least 10 years of Service, he shall be entitled to receive a normal retirement income commencing on his Normal Retirement Date computed in accordance with Section 4 based upon his Credited Service rendered up to his date of termination.

At the time of NHSP's disassociation from the Hospital, there were 5 NHSP employees who had completed at least 10 years of service with the Hospital, and, pursuant to the terms of the Hospital pension plan, these employees became eligible to receive retirement benefits. The remaining 52 NHSP employees, the members of the class in this action, had not fulfilled the 10-year service requirement of the plan, and their participation in the plan thus was terminated.

## DISCUSSION

### Summary Judgment

The basis of plaintiffs' claims is that their exclusion from participation in the Hospital pension plan constituted a partial termination of the plan, thus entitling them to recover the contributions NHSP made to the plan on their behalf. Section 411(d)(3) of the Internal Revenue Code provides that, upon the partial termination of a pension plan, the rights of affected employees to the benefits that have accrued as of the date of the partial termination are not forfeitable. 26 U.S.C. § 411(d)(3). According to section 1.411(d)–2(b)(1) of the regulations

---

1. By order, dated December 14, 1981, the action was certified as a class action pursuant to

Fed.R.Civ.P. 23.

promulgated by the Internal Revenue Service ("IRS"),

> [w]hether or not a partial termination of a qualified plan occurs . . . shall be determined by the Commissioner with regard to all the facts and circumstances in a particular case. Such facts and circumstances include: the exclusion, by reason of a plan amendment or severance by the employer, of a group of employees who have previously been covered by the plan; and plan amendments which adversely affect the rights of employees to vest in benefits under the plan.

26 C.F.R. § 1.411(d)–2(b)(1) (1982).

The relevant rulings of the IRS indicate that a partial termination is deemed to have occurred only when a "significant percentage" of the employees covered by the plan are excluded from participating in the plan either by discharge or plan amendment. Rev.Rul. 81–27, 1981–1 C.B. 228; [1978] 9 Stand.Fed.Tax Rep. (CCH) ¶ 6911 (September 11, 1978); Rev.Rul. 73–284, 1973–2 C.B. 139; Rev.Rul. 72–439, 1972–2 C.B. 223. A recent ruling suggests that, when the significant percentage test is met, the IRS will find a partial termination

> irrespective of whether the significant decrease in participation in the plan was the result of adverse economic conditions or causes within the control of the employer.

Rev.Rul. 81–27, 1981–1 C.B. 228.

■ IRS interpretations of the tax laws are entitled to "great weight," *Treadco Tires, Inc. v. United States,* 604 F.2d 14, 16 (5th Cir.1979) (citations omitted),

> [a]nd although revenue rulings do not have the binding effect of Treasury Department Regulations, they do have the force of legal precedents unless unreasonable or inconsistent with the provisions of the Internal Revenue Code.

*Dunn v. United States,* 468 F.Supp. 991, 993 (S.D.N.Y.1979) (footnote omitted). Since the revenue rulings that have adopted the significant percentage test are neither unreasonable nor inconsistent with the provisions of 26 U.S.C. § 411(d)(3), the court finds that they are the controlling precedents in this case.

■ In 1978, the IRS issued a special ruling in which it determined that, where 16.7% of the employees previously covered by a profit-sharing plan were excluded from participating in the plan, the significant percentage test had not been met. The IRS therefore found that no partial termination had taken place. [1978] 9 Stand.Fed.Tax Rep. (CCH) ¶ 6911 (September 11, 1978). In the case before the court, there were 1,529 employees participating in the Hospital pension plan when NHSP disassociated itself from the Hospital, and the disaffiliation resulted in the discharge of only 57 employees or 3.7%. Based upon the 1978 IRS special ruling, the court concludes that this is not a significant percentage and that there thus was no partial termination of the Hospital pension plan.[2]

■ Plaintiffs argue that, in all of the revenue rulings following the significant percentage approach, employment was terminated as a result of forces that either were foreseeable or within the control of the employer or the employee. In this case, plaintiffs contend that, since the severance of the NHSP employees was caused by a change in the law that was neither foreseeable nor within the control of the parties, the significant percentage test should not be applied. The court finds plaintiffs' argument meritless for two reasons. First, the IRS has indicated that the significant percentage test governs regardless of foreseeability or control. Rev.Rul. 81–27, 1981–1 C.B. 228. Second, the 1975 amendment to the Public Health Service Act did not cause the discharge of the NHSP employees; it merely precluded NHSP from receiving federal grants if it continued its relationship with the Hospital. The discharge resulted from NHSP's voluntary decision to sever that relationship. NHSP's

---

**2.** Prior to the commencement of this action, plaintiffs had requested the IRS to decide whether a partial termination of the Hospital pension plan had occurred. The IRS also found that the discharge of the NHSP employees did not constitute a partial termination of the plan. That decision, however, was withdrawn because, according to IRS procedural rules, the IRS may issue determination letters only to employers and plan administrators.

decision may have been forced upon it by adverse economic conditions caused by the 1975 amendment, but that is irrelevant to the determination whether a partial termination has occurred. *Id.*

Plaintiffs also call upon the equitable powers of the court, claiming that defendants will be unjustly enriched if permitted to retain the funds contributed by NHSP to the plan for the benefit of NHSP employees. The equities, however, can provide plaintiffs no relief. In *Schneider v. McKesson & Robbins, Inc.,* 254 F.2d 827 (2d Cir.1958), the Second Circuit rejected essentially the same equitable argument urged by plaintiffs here. The *Schneider* court held that the employees who were excluded from participating in the pension plan were bound by the terms of the contract, which clearly stated that the interest in the pension fund would cease upon the termination of the employment relationship. *Id.* at 830. Moreover, the plan provided that the amount of the contributions made by the employer was to be determined by an actuarial formula that took into account that any employee who did not remain with the company until retirement age would not be entitled to benefits. *Id.* The court therefore could find no "equitable justification" for affording any rights to those who did not meet the plan's vesting requirements, which would result in a "dilution of the interests" of the remaining plan participants. *Id. See Lovetri v. Vickers, Inc.,* 397 F.Supp. 293, 300–03 (D.Conn.1975).

In this case, the plan's 10-year vesting requirement is clear and unambiguous. Nevertheless, relying upon *Lucas v. Seagrave Corp.,* 277 F.Supp. 338 (D.Minn.1967), plaintiffs argue that it would be harsh and inequitable to hold them bound by the terms of the plan when the event that triggered the discharge of the NHSP employees was not contemplated by the plan or the parties. *See* Bernstein, *Employee Pension Rights When Plants Shut Down: Problems and Some Proposals,* 76 Harv.L. Rev. 952, 972 (1963). *Lucas,* however, involved the discharge of a substantial percentage of plan participants. 277 F.Supp. at 340. Moreover, in *Lucas,* plaintiffs alleged that the defendant had discharged them intentionally to recapture and avoid paying plaintiffs' pension benefits. *Id.* at 340 & 346. The court found that this allegation lent "substantial support" to plaintiffs' unjust enrichment theory and denied summary judgment because of the factual dispute regarding defendant's "bad faith." *Id.* at 346. Courts have interpreted *Lucas* to apply only when the impropriety of the employer's motives are in question. *Lovetri v. Vickers, Inc.,* 397 F.Supp. 293, 303 (D.Conn.1975); *Rothlein v. Armour & Co.,* 377 F.Supp. 506, 511 (W.D.Pa.1974). Here, plaintiffs have made no allegation that the NHSP employees were discharged for the purpose of denying them the rights under the Hospital pension plan that they would have acquired upon meeting the vesting requirements. Nor have plaintiffs alleged that the discharge was caused by anything other than NHSP's decision to sever its relationship with the Hospital so that it could continue to receive federal funding. The court thus concludes that there is no equitable reason for deviating from the terms of the plan, which expressly preclude plaintiffs from obtaining the relief they seek in this action.

### Costs and Attorneys' Fees

Defendants request an award of costs and attorneys' fees pursuant to section 502(g) of ERISA. 29 U.S.C. § 1132(g). Section 502(g), which authorizes the court to allow costs and attorneys' fees to either party, "is discretionary, not mandatory." *Fase v. Seafarers Welfare & Pension Plan,* 589 F.2d 112, 116 (2d Cir.1978); *see* 29 U.S.C. § 1132(g). Several factors must be considered by the court in determining whether to grant attorneys' fees to a party under section 502(g). *E.g., Ford v. New York Central Teamsters Pension Fund,* 506 F.Supp. 180, 183 (W.D.N.Y.1980), *aff'd per curiam,* 642 F.2d 664 (2d Cir.1981). Defendants, however, have not informed the court of the amount of the attorneys' fees expended on this matter. Nor is the court aware whether any members of the class have elected to be excluded from participating in the action. The court therefore is unable to determine whether the class members have the financial capacity to pay an award of attorney's fees. Since this

factor is a sufficient ground for denying a request for attorneys' fees, *see American Communications Ass'n, Local 10 v. Retirement Plan for Employees of RCA Corp.,* 507 F.Supp. 922, 923 (S.D.N.Y.1981), defendants' request for costs and attorneys' fees is denied without prejudice because the court lacks adequate information to determine the propriety or impropriety of such an award.

## CONCLUSION

Neither the Internal Revenue Code, the regulations promulgated thereunder nor the equities provide any basis for allowing plaintiffs to recover the plan contributions made by NHSP on their behalf. Accordingly, defendants' motion for summary judgment is granted and the complaint is dismissed on the merits. Defendants' request for costs and attorneys' fees is denied without prejudice.

Defendants are directed to submit a judgment on notice within 20 days after the entry of this order.

SO ORDERED.