## In re UNITED STATES LINES, INC., Debtor.

### Bankruptcy No. 86B–12240.

United States Bankruptcy Court, S.D. New York.

July 21, 1989.

See also, Bkrtcy., 103 B.R. 424.

Wisehart & Koch by Arthur M. Wisehart, New York City, for Employee Service Bureau.

Milbank, Tweed, Hadley & McCloy, by Alan Kornberg, New York City, for debtor.

Harold Jones, by Neil Mann, New York City, U.S. Trustee.

## DECISION AND ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Before this court is an application for compensation and/or reimbursement from the Chapter 11 estate of United States Lines, Inc. ("U.S.L.").

Applicant Wisehart & Koch ("Wisehart"), as counsel to the Employee Service Bureau ("ESB") and certain other former non-union employees of U.S.L., seeks an order pursuant to 11 U.S.C. § 503(b)(3) and (4) (1986) and section 502(g) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(g)(1) (1974),

awarding it compensation of $287,642.07 consisting of $283,740.00 for attorney fees and an additional $3,902.07 for costs and expenses from the U.S.L. estate.

## I.

Section 503(b)(3) and (4) of the Bankruptcy Code, 11 U.S.C. § 503(b)(3) and (4) (1986), permit the court to allow as administrative expenses the actual and necessary expenses incurred by a creditor or his attorney in making a "substantial contribution" to a Chapter 9 or 11 estate.

The threshold test to be met by any section 503 claimant is having made a "substantial contribution in a case under Chapter 9 or 11 ..." This phrase is derived from sections 242 and 243 of the former Bankruptcy Act, 11 U.S.C. §§ 642, 643 (repealed). The principal test under these former sections was the production of a direct benefit to the debtor's estate, and the legislative history pertaining to section 503 indicates that Congress intended that this benefit test would remain the touchstone of awards. *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 565–69, 12 Bankr.Ct. Dec. (CCR) 978 (Bankr.D.Utah 1985).

■ The "substantial contribution" test is thus satisfied where the services rendered have substantially contributed to an actual and demonstrable benefit to the debtor's estate, its creditors, and to the extent relevant, the debtor's shareholders. *See In re McLean Industries, Inc.*, 88 B.R. 36, 38, 17 Bankr.Ct.Dec. (CCR) 1248, 19 Collier Bankr.Cas.2d (MB) 191 (Bankr.S.D. N.Y.1988); *In re Rockwood Computer Corp.*, 61 B.R. 961, 965, (Bankr.S.D.Ohio 1986); *Jensen–Farley*, 47 B.R. at 565–73, *In re Calumet Realty Co.,* 34 B.R. 922, 926, 11 Bankr.Ct.Dec. (CCR) 361, Bankr.L. Rep. (CCH) ¶ 68489 (Bankr.E.D.Pa.1983). Broadly speaking, "[s]ervices which substantially contribute to a case are those which foster and enhance, rather than retard or interrupt the progress of reorganization." *In re Richton International Corp.*, 15 B.R. 854, 855 (Bankr.S.D.N.Y. 1981).

■ While the policy aim behind these provisions is to promote meaningful creditor participation in the reorganization process, *In re General Oil Distributers Inc.*, 51 B.R. 794, 805 (Bankr.E.D.N.Y.1985); *Calumet Realty*, 34 B.R. at 926, tension exists between this aim and the contrasting policy that administrative expenses of the estate be kept to a minimum. *In the Matter of Baldwin–United Corp.*, 79 B.R. 321, 338 (Bankr.S.D.Ohio 1987). That tension gives rise to the well settled rule that these statutory provisions are to be narrowly construed, *Manufacturers Hanover Trust Co. v. Bartsh (In re Flight Transportation Corp. Securities Litigation)*, 874 F.2d 576, 581 (8th Cir.1989); *In re Hanson Industries, Inc.*, 90 B.R. 405, 409 (Bankr.D. Minn.1988); *In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104, 121 (Bankr.S.D.N.Y. 1982), and that any recovery is subject to strict scrutiny by the court, *In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 689 (Bankr. S.D.Cal.1988); *McLean*, 88 B.R. at 39. The burden of proof as to the substantial benefit rendered to the estate is on the applicant, and the entitlement to an award must be established by a preponderance of the evidence. *Hanson Industries*, 90 B.R. at 409; *In re 1 Potato 2, Inc.*, 71 B.R. 615, 618, Bankr.L.Rep. (CCH) ¶ 71764 (Bankr.D. Minn.1987).

■ As a result, benefits which have been found to be insubstantial under § 503(b)(3) and (4) include those services which would merely deplete the assets of an estate without providing a corresponding greater benefit. Accordingly, services found to be duplicative of duties of the debtor or other court-appointed officers, absent proof that the appointed officer is either unable or unwilling to act, are not to be compensated since they would entail an excessive and undue burden upon the estate. *In re Texaco, Inc.*, 90 B.R. 622, 632 (Bankr.S.D.N.Y.1988); *In re Ace Finance Co.*, 69 B.R. 827, 831 (Bankr.N.D.Ohio 1987); *Baldwin–United*, 79 B.R. at 344. Services that do not actually increase the size of the estate may similarly be denied compensation. *In re Contract Marine Carriers, Inc.*, 85 B.R. 390, 392, 17 Bankr. Ct.Dec. (CRR) 649 (Bankr.E.D.Va.1988).

Most importantly, compensation for services which potentially pass the "substantial contribution" test might nevertheless be found to retard the reorganization process if recovery by creditors is materially diminished. *Surface Transit, Inc. v. Saxe (In re Estate of Third Avenue Transit Corporation),* 266 F.2d 862 (2d Cir.1959) *(dicta )* (Burden that the estate can safely bear is a factor in the granting of awards); *In the Matter of Multiponics Inc.,* 436 F.Supp. 1072, 1074–75 (E.D.La.1977), *aff'd,* 622 F.2d 731 (5th Cir.1980) (Funds on hand being able to satisfy only a fraction of the unsecured claims requires court to approve only a fraction of sum sought as a charge against the estate); *Richton,* 15 B.R. at 855–56 *(dicta )* (Burden that the estate can safely bear and impairment of other creditors is a factor in the granting of allowances).

■ Creditors face an especially difficult burden in passing the "substantial contribution" test since they are presumed to act primarily in their own interests. *Jensen–Farley,* 47 B.R. at 571. Attorneys must generally look to their own clients for payment. *E.g. McLean,* 88 B.R. at 38; *Jensen–Farley,* 47 B.R. at 569. In order to avoid the liberal granting of compensation to the many creditors who necessarily must take an active role in bankruptcy proceedings it is given that extensive participation in a case alone is insufficient to compel compensation. *McLean,* 88 B.R. at 38. Similarly, legal services which are provided solely in order to benefit the client-as-creditor are not compensable, even where they confer an incidental benefit upon the estate. *In re Flight Transportation Corp. Securities Litigation,* 78 B.R. 562, 564 (D.Minn.1987), *aff'd,* 874 F.2d 576 (8th Cir. 1989); *General Oil,* 51 B.R. at 805; *Richton,* 15 B.R. at 856. Correspondingly, services that confer a significant and demonstrable benefit upon the reorganization process which have not been rendered solely on behalf of a creditor's own interest should be compensated. *GATX Terminals Corp. v. Tarricone (In re Tarricone),* 83 B.R. 253, 255, 17 Bankr.Ct.Dec. (CCR) 425 (Bankr.S.D.N.Y.1988); *McLean,* 88 B.R. at

38; *General Oil,* 51 B.R. at 806; *Richton,* 15 B.R. at 856.

Such services generally take the

"form of constructive contributions in key reorganizational aspects, when but for the role of the creditor, the movement towards final reorganization would have been substantially diminished. The integrity of § 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to significant and tangible benefits to the creditors, debtor, or the estate."

*In re D.W.G.K. Restaurants,* 64 B.R. at 690.

■ Furthermore, something more than mere conclusory statements regarding one's involvement in an act's resulting "substantial contribution" must be tendered in order to for such involvement to be deemed compensable. Corroborating testimony by a disinterested party attesting to a claimant's instrumental acts has proven to be a decisive factor in awarding compensation to activities which otherwise might not constitute a "substantial contribution." *Compare Baldwin–United,* 79 B.R. at 340 (Debtor's former management testified as to attorney's instrumental acts in mediating disputes between senior and subordinated and equity security holders) *and General Oil,* 51 B.R. at 807 (Without representation by major unsecured creditors as to attorney's services performed over and above representation of client-as-creditor court would be inclined to deny compensation) *with Baldwin–United,* 79 B.R. at 342 (No corroborating testimony to support claim that opposition to substantive consolidation of estates was "substantial contribution")

Absent, or in addition to, such corroborating testimony, a court's own first-hand observance of the services provided may be a sufficient basis on which to find a "substantial contribution" *See Baldwin–United,* 79 B.R. at 343 (Based upon evidence, as well as Court's knowledge of case, award granted); *McLean* 88 B.R. at 39 (Clear to the Court at the hearing that had price issue not been raised by applicant others would not have been prompted to assert

their position concerning propriety of sale of stock which ultimately resulted in higher sale price).

With these standards in mind, we turn to the application before us.

## II.

Wisehart's alleged contributions to the estate include:

1) Enhancing Wisehart's own ability to represent the former employees through knowledge obtained in the process of assisting ESB members in completing individual proofs of claims. (Amended Fee Application ¶ 17);

2) Participation in a consensual resolution respecting the ESB claims leading to a court approved settlement agreement whereby, *inter alia,* U.S.L. agreed to share one-half the surplus in the U.S.L pension fund, or $3,150,000, with the beneficiaries of the plan, and the employees dropped their claims to the remainder. (The "Settlement Agreement") (Amended Fee Application ¶¶ 15, 49, 50);

3) Making a cross-motion and negotiation of a pending equitable reformation of the prior Settlement Agreement increasing, subject to court approval, the value of their settlement in stock rather than cash forms. (Supplemental Fee Application ¶ 8); and

4) Seeking class status for ESB which lead to the Debtor's *de facto* class recognition of the employee group. (Amended Fee Application ¶ 13).

Wisehart's application futher requests payment of twice Wisehart's lodestar rate based upon a "risk multiple." (Amended Fee Application ¶¶ 34–50).

The motion is opposed by the Debtor-in-possession to the extent that Wisehart's services benefitted primarly ESB members, that its request for compensation in connec-tion with the cross-motion and negotiation of a supplemental agreement not yet approved by the Official Creditors Committee is premature, and that the requested fee doubling Wisehart's lodestar rate is based upon an unsupportable "risk multiple." [1] The Debtors do not object to an allowance of $116,025 of fees and $3,902 of expenses. The United States Trustee objects to the application on the ground that Wisehart has not made a "significant contribution" to the case.

■ We cannot find that Wisehart has conferred a substantial benefit upon the estate by completing the individual proofs of claims. As stated in their fee application, this activity merely put Wisehart in a better position to represent the former employees in connection with their claims (Amended Fee Application ¶ 17). "Those services which are provided solely for the client-as-creditor, such as services rendered in prosecuting a creditor's claim are not compensable." *Richton,* 15 B.R. at 856; *see also Flight Transportation,* 78 B.R. at 564, *aff'd,* 874 F.2d 576 (8th Cir.1989); *General Oil,* 51 B.R. at 805.

■ For the same reason, the potential preservation of the U.S.L. cash assets in connection with reformation of the Settlement Agreement is not a "substantial contribution" to the estate. Reformation of the initial agreement was made solely to "rectify perceived inequities to the non-union employees resulting from the union settlements [the result was to] increase the value of the settlement." (Supplemental Application ¶ 4). Any benefit accruing to U.S.L. from the Supplemental Settlement Agreement having left untouched its cash and cash equivalents is wholly incidental to the benefit conferred to Wisehart's clients at the expense of other creditors also receiving shares of the same class of stock.

---

1. Wisehart has asked this Court to disallow the U.S.L's objection to the requested "risk multiple" on the ground that U.S.L., properly represented by counsel, had previously agreed not to oppose the request in connection with a possible settlement of ESB's motion for reformation (Wisehart Affidavit ¶. 3). We find no basis for such a disallowance. The alleged settlement has not been presented to or approved by this Court. The fiduciary duty of the debtor-in-possession to object to unreasonable fee allowances cannot be contracted away. A promise by a fiduciary tending to violate his fiduciary duty is unenforceable on grounds of public policy. *See* RESTATEMENT (SECOND) OF CONTRACTS § 193 (1979).

We also do not find that Wisehart's seeking of class status for the members of ESB "substantially contributed" to the Chapter 11 case. This action was concededly taken "to provide better protection for the benefit rights and interests of the former employees (Amended Fee Application ¶ 13) since "the claim of any single employee ... was not of sufficient size to warrant pursuing Debtors with very limited assets...." (Applicant's Brief at 6). As such, the service was provided solely for the client-as-creditor. *Richton*, 15 B.R. at 856. Moreover, the key bankruptcy policy of similar treatment of similar claims, *see Granada Wines, Inc. v. New England Teamsters and Trucking Industry Pension Fund*, 748 F.2d 42, 46–47 (1st Cir. 1984); *In re Mastercraft Record Plating Co.*, 32 B.R. 106, 8 Collier Bankr.Cas.2d (MB) 1268 (Bankr.S.D.N.Y.1983), *rev'd on other grounds*, 39 B.R. 654 (S.D.N.Y.1984), absent highly compelling justification for differentiation, *see Teamsters Nat'l Freight Industry Negotiating Committee v. U.S. Truck Co., Inc. (In re U.S. Truck Co., Inc.)*, 800 F.2d 581, 586 n. 8 (6th Cir. 1986); *In re Atlanta West VI*, 91 B.R. 620, 625, 18 Bankr.Ct.Dec. (CCR) 520, Bankr.L. Rep. (CCH) ¶ 72469 (Bankr.N.D.Ga.1988); *In re AG Consultants Grain Division, Inc.*, 77 B.R. 665, 674 (Bankr.N.D.Ind. 1987), not present here, would have lead to the same equal recognition given by U.S.L. in its plan.

In addition, the compensation requested for work done in connection with the fee application itself is denied. How that preparation conferred a substantial benefit on the estate is not stated. Regardless of the debate regarding allowance of time spent in preparation of fee applications under § 330 of the Bankruptcy Code permitting fees and expenses to be awarded upon a lesser showing of "actual [and] necessary services," 11 U.S.C. § 330(a)(1) (1986), *compare In re White Motor Credit Corp.*, 50 B.R. 885, 893 (Bankr.N.D.Ohio 1985) (Applicant not entitled to payment for preparation of allowance application) *with In re Nucorp Energy Inc.*, 764 F.2d 655, 659 (9th Cir.1985), *In the Matter of Pothoven*, 84 B.R. 579, 586 (Bankr.S.D.Iowa 1988) *and In re Wildman*, 72 B.R. 700, 710, 15 Bankr.Ct.Dec. 1189 ((Bankr.N.D.Ill.1987) (Such expenses allowed in part), the "substantial contribution" test does not permit such an award. The cases relied upon by Wisehart in support of its request are inapplicable. Neither *Gagne v. Maher*, 594 F.2d 336 (2d Cir.1979), *aff'd*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) nor *Robert v. Sobel*, 688 F.Supp. 861 (S.D.N.Y.1988) involved §§ 503(b)(3) and (4) and the "substantial contribution" test.

In light of U.S.L.'s support of Wisehart's "substantial contribution" in connection with the Settlement Agreement and to claims relating to the Pension Plan (Debtor's Brief at 7), and our agreement with the applicant that these services benefitted other creditors as well as the estate, such services were a substantial contribution under section 503(b)(3).

### III.

We now turn to the amount of the allowed claim. Section 503(b)(4) limits the recovery for attorneys fees and expenses incurred by a creditor in making a substantial contribution to reasonable fees and expenses.

Based upon the Court's analysis of Wisehart's timesheets the fees associated with the above classification are as follows:

| | |
|---|---|
| 1) Individual Proofs of Claims: | $ 1,299.25 |
| 2) Cross–Motion and Reformation: | 13,967.25 |
| 3) Class Status: | 5,366.25 |
| 4) Fee Application: | 15,107.00[2] |
| 5) Settlement Agreement: | 106,130.25 |

---

**2.** While Wisehart's application limits its request for compensation of fee application preparations to $12,695.00, their timesheets reflect an additional allocation of $2,412.00 to "risk multiple research."

The Court, however, is unable to evaluate the substance of Wisehart's claimed expenses in the above manner. Unlike the fees, they are not classified by task. The Court is unable to determine, for example, that portion of "copying" which belongs to the several services provided. Since only part of the services made a "substantial contribution," differentiation is required. It is well settled that uncertainties arising because of inadequate records must be resolved against the applicant. *New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1142 (2nd Cir.1983) (citing *In re Hudson & Manhattan Railroad Co.,* 339 F.2d 114, 115 (2nd Cir.1964) and *E.E.O.C. v. Sage Realty Corp.,* 521 F.Supp. 263, 273–74 (S.D.N.Y. 1981)); *General Oil,* 51 B.R. at 801.

The above fees represent Wisehart's lodestar rate. The lodestar rate is the product of the number of hours reasonably expended multiplied by a reasonable hourly rate, and serves as the initial basis from which to fix fees. Seventy-four percent of the requested fees, performed by Wisehart's senior partner, were billed at an hourly rate of $265.00, sixteen percent at a rate of $75.00, and the remaining ten percent at a rate ranging from $75.00 to $165.00. By themselves and without a "risk multiple," the fees are on the high side of the reasonableness spectrum. Compensable services thus amount to fees of $106,130.25

Wisehart's application, however, requests payment of twice Wisehart's lodestar rate based upon a "risk multiple." In ordinary fee shifting cases, the decision to use multipliers to adjust the lodestar figure rests in the discretion of the trial court. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

Even in those cases which do not concern the underlying tensions of § 503(b)(3) and (4), the instances in which a district court may allow such a multiplier has been severely restricted by the Supreme Court in *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 70 L.Ed.2d 891 (1984). *In re "Agent Orange" Products Liability Litigation,* 818 F.2d 226, 234 (2d Cir.), *cert. denied sub. nom. Schwartz v. Dean,* 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987). As observed in *Agent Orange,* the Supreme Court has decreed that fee enhancement above a firm's lodestar rates should not be granted absent specific evidence establishing "that the quality of the service rendered was superior to that one should reasonably expect … and that the success was exceptional." *Blum,* 465 U.S. at 899, 104 S.Ct. at 1549.

That standard applies under section 330 of the Bankruptcy Code. This "rare and exceptional standard strikes the balance mandated by Congress to fully compensate bankruptcy counsel with a reasonable but not excessive fee." *Baldwin–United,* 79 B.R. at 346. *See In re Powerine Oil Co.,* 71 B.R. 767, 772 (9th Cir. BAP 1986); *White Motor,* 50 B.R. at 890.

In bankruptcy cases, moreover, an additional subjective factor to be considered in the lodestar adjustment is the size of the recovery by general creditors and the burden the estate can safely bear. *Compare General Oil,* 51 B.R. at 802 (Further reduction of lodestar rate was appropriate given meager return of $10,000 on $10 million of claims) *with In re Elmendorf,* 57 B.R. 580, 587, 14 Collier Bankr.Cas.2d 224 (Bankr.D. N.H.1986) (Enhancement over lodestar fee was justified based, in part, on *outstandingly* successful recoveries for creditors). The tension between guarding the estate's cash and awarding full compensation is greatest in the section 503(b) context since the representation is not court approved and the court remains unaware of these claims until the very end of the bankruptcy process.

Although the U.S.L. estate is an outstandingly successful reorganization in terms of the magnitude of the disaster and the extreme complexity of U.S.L.'s affairs, as the Court stated at the confirmation hearing, the return to creditors is meager at best and highly speculative. A hypothetical unsecured holder of a $100,000 al-

lowed claim against U.S.L. will receive shares of New U.S.L. Common Stock equal to 0.0043% of the fully diluted issued and outstanding common equity securities (Disclosure Statement p. 32). Extensive questioning by this Court of U.S.L.'s president at the confirmation hearing regarding U.S.L.'s ability to reorganize successfully revealed that U.S.L. faced fixed obligations of $5.1 million in addition to outstanding administrative and priority claims amounting to $28.1 million. On the effective date of the Plan, however, assets consisting of cash and cash equivalents would amount to only $22.5 million, composed of $4 million in cash and $18.5 million in solid receivables and escrowed funds. This left this estate and the U.S. Lines (S.A.), Inc. estate in the position of being able to contribute only the lowest sum agreed upon to the reorganized company. The plan was confirmed in part upon the unrebutted testimony that the estimated true value of the outstanding claims was limited to only $14 million and that the Reorganization Trust established by the Plan would be adequately capitalized (Transcript pp. 41–48).

 That financial status demonstrates that the requested risk multiple of 2.0 is a burden which the estate cannot safely bear. The limited recovery by unsecured creditors demonstrates that to award the requested risk multiple would be unconscionable. The cases cited by Wisehart are easily distinguishable. They were either non-bankruptcy proceedings not involving estate burden considerations, *e.g. Thompson v. Kennickell*, 710 F.Supp. 1, 50 CCH EPD ¶ 38,999 (D.C.1989); *McKenzie v. Kennickell*, 875 F.2d 330 (D.C.Cir.1989), (D.C.Cir. May 23, 1989), or bankruptcy proceedings in which the estate apparently, *e.g. In re Manoa Finance Co., Inc.*, 853 F.2d 687 (9th Cir.1988); or explicitly, *e.g. Elmendorf*, 57 B.R. at 587, could bear the burden. The request for a premium award pursuant to 11 U.S.C. § 503(b)(3) and (4) is denied.

### IV.

 No additional relief is to be granted pursuant to section 502(g) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(g)(1). To the extent that an ERISA award would result in allowances for insubstantial contributions it is to be disallowed. In any case, a section 502(g) award, given the circumstances of this case, would lead to the same result obtained pursuant to the Bankruptcy Code.

Although section 502(g), 29 U.S.C. § 1132(g)(1), which authorizes the Court to award attorney's fees, is to be liberally construed in favor of participants in employee benefit plans, *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 872 (2nd Cir.1987); *Smith v. CMTA Pension Trust*, 746 F.2d 587, 598 (9th Cir.1984), ERISA itself explicitly states that the Act's provisions do not override other federal laws: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or separate any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under such law." 29 U.S.C. § 1144(d) (1974). "The language of § 1144(d) could not be clearer: nothing in ERISA should be interpreted to impact other federal law." *Pulaski Highway Express, Inc. v. Central States Southeast and Southwest Areas Health and Welfare Pension Trusts (In re Pulaski Highway Express, Inc.)*, 41 B.R. 305, 309, 12 Bankr.Ct.Dec. (CRR) 34, 14 Collier Bankr.Cas.2d (MB) 417 (Bankr.M.D. Tenn.1984) (ERISA section 403(c)(1), 29 U.S.C. § 1103(c)(1), providing that assets of a plan shall never inure to the benefit of an employer did not prohibit Bankruptcy Court from ordering return of contributions to Debtor's estate as preferences.)

Consistent with this view, courts have specifically subordinated ERISA provisions to contrary provisions in the Bankruptcy Code. While ERISA may pre-empt state law in this respect, *see Eisenberg v. Baviello (In the Matter of Baviello)*, 12 B.R. 412, 417 (E.D.N.Y.1981), *but see Shaw v. Delta Airlines*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983) (Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that

the law "relates to" a plan. *c.f. American Telephone and Telegraph Co. v. Merry,* 592 F.2d 118, 121 (2nd Cir.1979)),

"it clearly was not intended to affect the operation of other federal law ... ERISA's specific provision precluding interference with the operation of federal law renders the Bankruptcy Code effective over *any* ERISA provision to the contrary."

*Goff v. Taylor (In re Goff),* 706 F.2d 574, 586–87 (5th Cir.1983) (emphasis added). *See also, Samore v. Graham (In re Graham),* 726 F.2d 1268, 1273 (8th Cir.1984) (ERISA's anti-alienation clauses, 29 U.S.C. § 1056(d)(1), do not preclude inclusion of pension benefits in debtor's bankrupt estate); *In the Matter of Miller Block Co., Inc.,* 63 B.R. 99, 103–04, Bankr.L.Rep. ¶ 71291 (Bankr.W.D.Pa.1986) (Employee pension fund, in obtaining judgment against debtor, did not create any benefit for estate and thus liquidated damages and attorney fees claimed by fund pursuant to ERISA were not compensable from the estate as general unsecured claims); *Levine v. Central States Southeast and Southwest Areas Pension Fund (In re Ottawa Cartage, Inc.),* 55 B.R. 371, 378 (N.D.Ill. 1985) (ERISA's underlying policy considerations did not compel subordination of preferential transfer provision of the Bankruptcy Code); *Central States Southeast and Southwest Areas Health and Welfare and Pension Funds v. Columbia Motor Express (In re Columbia Motor Express, Inc.),* 33 B.R. 389, 394 (M.D.Tenn.1983) (Bankruptcy Code controls the allowance of claims including those arising under ERISA); *Baviello,* 12 B.R. at 417 (Anti-alienation clauses of ERISA, 29 U.S.C. § 1056(d)(1), do not preclude passage of title to trustee in bankruptcy by operation of federal law under the Bankruptcy Act, 11 U.S.C. § 110(a)).

Wisehart has offered this Court no indication that section 502(g), 29 U.S.C. § 1132(g)(1), was to be excepted from section 1144(d).[3] Neither does section 502(g) implicitly repeal 11 U.S.C. § 503(b). The Supreme Court had repeatedly held that repeals by implication are disfavored. *See e.g. T.V.A. v. Hill,* 437 U.S. 153, 189, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978). Repeals by implication are appropriate where provision of two acts are in irreconcilable conflict. ERISA and the Bankruptcy Code are easily reconciled by resort to section 1144(d). If an award of attorney fees pursuant to section 502(g) is interpreted to supercede or modify the Code's "substantial contribution" requirement, 11 U.S.C. § 503(b), such a result would violate the proscription of 29 U.S.C. § 1144(d).

Moreover, even were § 502(g) to be found to apply independently of section 503(b)(3) and (4) of the Bankruptcy Code, Wisehart would not be entitled to a risk multiple or the full amount of fees requested. Section 502(g) gives the court discretion with regard to awarding such fees, *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980); *Fase v. Seafarers Welfare & Pension Plan,* 589 F.2d 112, 116 (2d Cir.1978), and the ability of the opposing party to satisfy an award of fees is a factor necessary to consider when such fees are granted, *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 602 n. 9 (2d Cir.) *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Janowski v. Int'l Brotherhood of Teamsters Local No. 710 Pension Fund,* 673 F.2d 931, 940 (7th Cir. 1982), *cert denied,* 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112, *cert granted, judgement vacated, and case remanded,* 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); *Iron Workers,* 624 F.2d at 1266; *Hummell v. S.E. Rykoff Co.,* 634 F.2d 446, 453 (9th Cir.1980); *Eaves v. Penn,* 587 F.2d 453, 465 (10th Cir.1978).

Awards have therefore been granted where "Defendants can probably afford the expenses involved," *Birmingham v. Sogen–Swiss Int'l Corp. Retirement Plan,* 529 F.Supp. 86, 92 (S.D.N.Y.1981), *aff'd,* 718 F.2d 515 (2nd Cir.1983), and denied

---

**3.** The party claiming the benefit of a statutory exception bears the burden of persuasion. *United States v. First City National Bank,* 386 U.S. 361, 366, 87 S.Ct. 1088, 1092, 18 L.Ed.2d 151 (1967).

where parties of modest means would clearly have been burdened by being cast in liability, *see e.g., Colucci v. New York Times Co.*, 533 F.Supp. 1011, 1013 (S.D.N.Y.1982); *American Communications Association, Local 10, IBT v. Retirement Plan for Employees of RCA Corp.*, 507 F.Supp. 922, 923 (S.D.N.Y.1981), or upon a party's representation to the Court of his inability to satisfy an award, *see e.g., Dardaganis v. Grace Capital, Inc.*, 684 F.Supp. 1196, 1200 (S.D.N.Y.1988), or were the court was unable to determine whether the party had the financial capacity to pay the award upon noting that this factor is a sufficient ground for denial, *see e.g., Wishner v. St. Luke's Hospital Center*, 550 F.Supp. 1016, 1020–21 (S.D.N.Y.1982). One court in this district has stated that "this factor is not a determinative one," *Korn v. Levine Bros. Iron Workers Corp.*, 574 F.Supp. 836, 844 (S.D.N.Y.1983); it did so only while further noting that defendant was a solvent company. And although another court agreed that it would be unconvinced that this factor would be a sufficient ground to deny an award of attorney's fees, it limited that statement to the specific circumstances of the case in which not only had the party failed to show any hardship but where the other relevant factors were overwhelmingly satisfied, *Schoenholtz v. Doninger*, 657 F.Supp. 899, 912 (S.D.N.Y.1987).

Here, the testimony at confirmation that cash is short and the recovery to creditors is meager are sufficient reasons to limit all of Wisehart's fees to a total of $106,130.25.

Nor do the other factors applicable under § 502(g) direct an award of additional fees. Those factors include:

(1) The degree of the offending parties' culpability or bad faith; (2) whether or not an award of attorneys fees against the offending parties would act as a deterance of others (3) benefit conferred and (4) relative merits of the parties' position.

*E.g. Schoenholtz v. Doniger*, 657 F.Supp. at 910. Here there is no suggestion that U.S.L. acted culpably or in bad faith or that there was anything to deter. Rather, the

dispute concerned the issue of whether the surplus in a pension plan belongs to the employer or to the plan beneficiaries—an issue as yet unresolved. While the benefit achieved was half the surplus, a division reflecting the unresolved nature of the issue, the fee awarded under § 503(b)(4) reflects that benefit.

For the foregoing reasons, the application must be and hereby is granted to the extent of allowing Wisehart a priority claim of $106,130.25 and is otherwise denied. It is

SO ORDERED.