**In re GLICKMAN, BERKOWITZ, LEVINSON & WEINER, P.C., Debtor.**

**Bankruptcy No. 94–17034SR.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 11, 1996.

Jay G. Ochroch, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA.

Bruce E. Hartman, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, PA, for Michael A. Valucci.

William Morrow, Wilson, Drayer, Morrow & Hagarity, Norristown, PA, for Stephen P. Leff, C.P.A., Nicholas Crocetti, C.P.A. and Richard Levinson, C.P.A.

Kevin P. Callahan, Assistant U.S. Trustee, Philadelphia, PA.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

This matter is before the Court upon the request for payment of an administrative expense filed by Fox, Rothschild, O'Brien & Frankel ("Fox Rothschild"). Fox Rothschild is counsel to fifteen former employees of the Debtor who filed priority wage claims in this Chapter 11 case (the "Former Employees").[1] Objections to Fox Rothschild's request were filed by another priority wage claimant, Michael A. Valucci, as well as by three of the Debtor's other creditors, Stephen Leff, C.P.A., Nicholas Crocetti, C.P.A., and Richard Levinson, C.P.A., who are former directors, minority shareholders and officers of the Debtor (the "Objectors"). A hearing was held on March 28, 1996. The issues have been fully briefed, and thus are ripe for adjudication. For the reasons which follow, Fox Rothschild's request for payment of an administrative expense will be denied.

### Background

The bankruptcy case underlying this proceeding was filed by the Debtor, a professional corporation, which performed accounting and tax-related services for various local and regional clients, on October 27, 1994. An application to employ Obermayer, Rebmann, Maxwell and Hippel ("Obermayer" or the "Obermayer firm") as bankruptcy counsel was filed that same day and granted by Order dated November 1, 1994. The Former Employees were employed by the Debtor until the filing date, at which time their employment was terminated without full payment being made for their salary, vacation time, benefits prepayments or expense reimbursements.

An Official Committee of unsecured creditors was appointed by the United States Trustee. The Committee selected Vincent J. Marriott, III ("Marriott"), of the firm of Bal-

---

1. The Former Employees include: Judith A. Capra, John D'Angelo, Louis Esposito, Richard Fragale, Paul G. Giordano, Maret Kita, Francis X. Margay, Jr., Johnathan T. Marks, Elizabeth Mau- gle, Scott A. McPherson, Betsy Ryan, Jeff Silver, Kathleen M. Simpson, Helen A. Steicher and Lisa Underwood.

lard Spahr Andrews & Ingersoll as its counsel.

Obermayer filed its first Application for Compensation and Reimbursement of Expenses on July 26, 1995 (the "Application"). Fox Rothschild submits that it asked Marriott to file an objection to the Application, since it believed that there was improper conduct on the part of the Obermayer firm and as such, that Obermayer was not entitled to its entire fee. Marriott did not make the requested objection, and accordingly Fox Rothschild filed objections to the Application on August 22, 1995 and September 21, 1995.

The Debtor filed its Modified Third Amended Disclosure Statement and Plan of Reorganization on December 29, 1995. Fox Rothschild filed an objection to the Modified Third Amended Disclosure Statement on December 29, 1995. The Debtor subsequently filed further modified versions of the Third Modified Amended Disclosure Statement. The Debtor's Third Modified Amended Disclosure Statement, as further modified, was approved by the Court by Order dated January 12, 1996. Fox Rothschild actively participated in every stage of the proceedings leading up to the approval of the Third Modified Amended Disclosure Statement, and lodged various objections to the Debtor's liquidation analysis. It did not disclose its intention to file the instant request for payment of an administrative expense, however, at any time prior to doing so.

Fox Rothschild filed its request for payment of an administrative expense on February 8, 1996, seeking payment for work it alleges was necessary to file and prosecute its objections to Obermayer's Application, and for the work related to negotiating an agreement with Obermayer to reduce total post-petition fees to be charged against the Debtor's estate by fifteen percent, which agreement was subsequently approved by the Court. Fox Rothschild argues that the negotiated, Court-approved, fifteen percent reduction of Obermayer's fees has resulted in a savings of $24,000 to date, and projects that it ultimately will result in a benefit to the Debtor's estate of at least $30,000. For securing this "benefit," Fox Rothschild requests payment of $17,902.50 from the Debtor's estate pursuant to 11 U.S.C. § 503(b)(3)(D), the same consisting of $16,418 for legal services rendered and $1,484.50 for related expenses.

**I.**

Subsections 503(b)(3) and (b)(4) provide statutory authority for bankruptcy courts to make awards of administrative expenses. The Court notes preliminarily that a bankruptcy court has wide discretion to determine the amount of expenses to be awarded under § 503. *In re Lister*, 846 F.2d 55, 56 (10th Cir.1988), citing *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1252 (5th Cir.1986). Moreover, a determination of whether or not to allow any administrative expenses under § 503(b)(3)(D) is left to the bankruptcy court's discretion. *Id.* Accord *In re Hooker Investments, Inc.*, 188 B.R. 117, 120 (S.D.N.Y.1995); *Matter of Indiana Walnut Products, Inc.*, 136 B.R. 522 (Bankr. N.D.Ind.1991); *see also, Lebron v. Mechem Financial, Inc.*, 27 F.3d 937, 946 (3d Cir. 1994) (a determination of whether or not a "substantial contribution" to a reorganization has been made is a question of fact).

While the policy aim behind §§ 503(b)(3) and (b)(4) is to promote meaningful creditor participation in the reorganization process, tension exists between that aim and the opposing policy that administrative expenses of the estate be kept to a minimum. *In re U.S. Lines, Inc.*, 103 B.R. 427, 429 (Bankr.S.D.N.Y.1989); *see also, In re Lease–A–Fleet, Inc.*, 148 B.R. 419, 421 (Bankr.E.D.Pa.1992). That tension gives rise to the well-settled rule that these statutory provisions are to be narrowly construed, and that any recovery is subject to strict scrutiny by the court. *Id.; In re Lease–A–Fleet, Inc.*, 148 B.R. at 421.[2] *See also, In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 690 (Bankr.S.D.Cal.1988) ("The integrity of § 503(b) can only be maintained by strictly limiting compensation to extraordinary credi-

---

**2.** In *In re Lease–A–Fleet, Inc.*, now Chief Judge Scholl of this Court said that "[§ 503(b)(3)(D)] is a particularly narrowly-construed provision, allowing administrative claims only for extraordinary 'substantial contributions' to a case by a creditor." *Id.*, 148 B.R. at 421.

tor actions which lead directly to significant and tangible benefits to the creditors, debtor, or the estate.").

 Subsections 503(b)(3) and (b)(4) provide, in relevant part:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including— . . .

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by— . . .

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a *substantial contribution in a case under chapter 9 or 11 of this title*. . . .

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant. . . .

11 U.S.C. § 503(b)(3) and (b)(4) (emphasis added). As the plain language of § 503(b)(4) suggests, the allowance of attorneys fees is only appropriate in situations which fall within the scope of § 503(b)(3). *Lebron v. Mechem Financial, Inc.*, 27 F.3d at 943–44.[3]

 It is well settled that the threshold test to be met by any § 503(b)(3)(D) claimant is to prove that "it has made a substantial contribution in a case under chapter 9 or 11 of this title." *Lebron v. Mechem Financial, Inc.*, 27 F.3d at 943; *see also, In re U.S. Lines, Inc.*, 103 B.R. at 429 ("The burden of proof as to the substantial benefit rendered to the estate is on the applicant, and the entitlement to an award must be established by a preponderance of the evidence."); *In re McLean Industries, Inc.*, 88 B.R. 36, 38 (Bankr.S.D.N.Y.1988); *In re Paolino*, 71 B.R. 576 (Bankr.E.D.Pa.1987). The "substantial contribution" requirement is sat-

---

**3.** Notably, Fox Rothschild seeks approval of its request for payment of attorney's fees and related expenses solely on the basis of section 503(b)(3)(D), even though compensation of professional services is expressly provided for in § 503(b)(4). *Lebron v. Mechem Financial, Inc.*, 27 F.3d at 943–44. Fox Rothschild's failure to rely on § 503(b)(4) apparently is the result of its recognition that the threshold issue presented here is whether or not its fees fall within the scope of 503(b)(3)(D). Nevertheless, this oversight creates some serious problems concerns for the other interested parties as well as for the Court. The plain language of § 503(b)(4) provides, in relevant part, as follows: "reasonable compensation [shall be allowed] for professional services rendered by an attorney . . . of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, *the nature, the extent*, and the value of such services, and the cost of comparable services other than a case under this title." *Id.* (emphasis added). Notwithstanding that plain language, Fox Rothschild did not file a fee application along with its request for payment pursuant to § 503, and accordingly neither the Court nor the Objectors have had an opportunity to determine the specific nature and extent of the services for which Fox Rothschild seeks compensation. At the hearing on March 28, 1996, Fox Rothschild offered to file a fee application with the Court. Since the Court has determined, however, that Fox Rothschild's services did not confer the required "sub-

stantial contribution" to the Debtor's estate, the missing fee application becomes a moot issue.

The Court is also concerned that Fox Rothschild, not its clients—the Former Employees, has chosen to file the request for payment of an administrative expense pursuant to § 503(b)(3)(D). Only creditors (indenture trustees, equity security holders and creditor and equity holder committees other than official committees appointed under 11 U.S.C. § 1102) may apply for reimbursement of expenses. *In re St. Mary Hospital*, 97 B.R. 199 (Bankr.E.D.Pa.1989), *aff'd*, 120 B.R. 25 (E.D.Pa.1990), *aff'd sub nom, Norris Square Civic Associates v. St. Mary Hospital*, 931 F.2d 51 (3d Cir.1991); *see also, Lebron v. Mechem Financial, Inc.*, 27 F.3d at 943. That is not to say, however, that a law firm is precluded by § 503 from requesting the payment of administrative expenses under subsections 503(b)(3) and (b)(4) on behalf of its clients.

In *In re St. Mary Hospital*, now Chief Judge Scholl of this Court determined that the class of individuals requesting payment of an administrative expense under subsections 503(b)(3) and (b)(4) were not creditors of the bankruptcy estate. *Id.*, 97 B.R. at 202–03. The Former Employees, on the other hand, are creditors of the Debtor's estate and, accordingly, to the extent Fox Rothschild is acting on their behalf, the Court has determined that consideration of the substantive issues underlying their request is appropriate.

isfied where services rendered have substantially contributed to an actual and demonstrable benefit to the debtor's estate, its creditors and, to the extent relevant, the debtor's shareholders. *In re U.S. Lines, Inc.*, 103 B.R. at 429. It follows, therefore, that the benefit received by the debtor's estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests. *Lebron v. Mechem Financial, Inc.*, 27 F.3d at 944. At the same time, it must be noted that most activities of a creditor that contribute to the estate will also, of course, benefit the creditor to some degree, and the existence of a self-interest does not in and of itself preclude reimbursement of § 503 administrative expenses. *Id.*

■ Creditors do, however, face an especially difficult test in satisfying the "substantial contribution" requirement since they, like creditors committees and other parties interested in a reorganization, are presumed to engage legal counsel to protect their own interests. *Lebron v. Mechem Financial, Inc.*, 27 F.3d at 943. *Accord In re Lister*, 846 F.2d at 56; *In re U.S. Lines, Inc.*, 103 B.R. at 430. Under that presumption, the fees incurred by a creditor for legal services become "reimbursable [from a debtor's estate] if, but only if, the services 'directly and materially contributed' to the reorganization." *Lebron v. Mechem Financial, Inc.*, 27 F.3d at 943, citing *Steere v. Baldwin Locomotive Works*, 98 F.2d 889, 891 (3d Cir.1938) (construing § 77B(c)—a predecessor of § 503; *In re Solar Mfg. Corp.*, 206 F.2d 780 (3d Cir.1953) (same); and *In re Lister*, 846 F.2d at 57 (applying § 503(b)(3)(D)); *see also, In re Consolidated Bancshares, Inc.*, 785 F.2d at 1253. Thus, a creditor, who has engaged legal counsel, and as such provided legal services which have directly and materially contributed to a reorganization, and which were not rendered solely on behalf of that creditor's own interest, should be reimbursed for the cost of the legal services and related expenses incurred. *In re U.S. Lines, Inc.*, 103 B.R. at 430.

■ In sum, legal services provided by a creditor are reimbursable under § 503 if, but only if: (1) the services provided resulted in a "direct and material" benefit to the debtor's estate *and* the creditors; or (2) the services otherwise "fostered and enhanced" the progress of the debtor's reorganization. *Lebron v. Mechem Financial, Inc.*, 27 F.3d at 943–44. Against these principles, the Court turns its consideration to Fox Rothschild's request for payment of an administrative expense pursuant to § 503(b)(3)(D).

## II.

■ Fox Rothschild requests that the Court authorize payment of $17,902.50 from the Debtor's estate, arguing that it has sustained its burden of proof that it made a "substantial contribution" in this Chapter 11 case, since the Debtor's estate has been increased by $24,000 to $30,000 through its efforts. In that regard, Fox Rothschild relies solely on the facts that (1) it filed objections to the Obermayer firm's fee Application, and (2) subsequently entered into a Court-approved stipulation (the "Stipulation") with Obermayer wherein it was agreed that Obermayer would

> "reduce its total Post-petition fees to be charged to the Debtor by fifteen percent (15%), which reduction shall be set forth in the next fee application(s) whether interim and/or final. Included in the term 'Obermayer's fees' is all time expended and to be expended by the Obermayer firm on the Debtor's behalf in this case (94–17404) from and after October 27, 1994."

Stipulation at 2. In further support of its argument, Fox Rothschild has directed the Court's attention to the following cases, wherein a determination was made that services provided by a § 503 claimant were sufficient to justify the authorization of the payment of fees and related expenses incurred by the claimant, at least in part, pursuant to subsections 503(b)(3) and (b)(4): *In re U.S. Lines, Inc.*, 103 B.R. 427 (Bankr.S.D.N.Y. 1989); *In re McLean Industries, Inc.*, 88 B.R. 36 (Bankr.S.D.N.Y.1988); *In re Paolino*, 71 B.R. 576 (Bankr.E.D.Pa.1987).

The Objectors, on the other hand, argue, *inter alia*, that: Fox Rothschild's application is untimely, and as such Fox Rothschild waived any right to be reimbursed as set forth in its request and is estopped from

seeking reimbursement; Fox Rothschild failed to file a fee application, and should not be given a "second bite at the apple" in order to do so; Fox Rothschild's request is inequitable and contrary to bankruptcy policy; Fox Rothschild has not shown, and cannot show, that it has made a "substantial contribution" justifying payment of its claim; and Fox Rothschild's request is unsupported by any authority.

Turning first to the argument that Fox Rothschild's request is unsupported by any authority, the Court notes that we have been unable to identify any case discussing a § 503 request for attorneys fees which was predicated upon an objection lodged to a professional fee that was subsequently reduced by agreement or by a bankruptcy court. The cases relied upon by Fox Rothschild merely support the general proposition that if the requesting party establishes that it made a "substantial contribution" in a Chapter 11 case, the bankruptcy court may authorize payment of attorneys fees under § 503. Beyond that, the cases relied upon by Fox Rothschild actually support the Objector's argument that Fox Rothschild's efforts do not constitute a "substantial contribution."

In *In re Paolino*, the court determined that the § 503 applicant's legal theories provided at least a partial basis for the appointment of a Chapter 11 trustee, and accordingly authorized partial payment of the fees and related expenses requested under subsections 503(b)(3)(D) and (b)(4). *Id.*, 71 B.R. at 581. While the *Paolino* court did not say as much, the appointment of a Chapter 11 trustee is generally designed to "foster and enhance" the progress of a Chapter 11 case.

In *In re U.S. Lines, Inc.*, the § 503 creditor-claimant's attorneys were involved in the negotiation of a settlement agreement regarding a $3,150,000 fund. *Id.*, 103 B.R. at 431. As a result of the settlement agreement, half of that fund, $1,575,000, benefitted other creditors as well as the estate. The court concluded therefore that the services rendered by the § 503 creditor-claimant's attorneys provided a "substantial contribution" to the debtor's estate sufficient to support a reimbursement award under § 503(b)(3)(D).

In *In re McLean Industries, Inc.*, the court found that a law firm requesting reimbursement of fees and related expenses on behalf of its client, several prepetition creditors, had made a "substantial contribution" to the debtor's estate, and therefore was entitled to payment of its § 503(b)(3)(D) administrative claim, because the law firm had raised an objection to the sufficiency of the $350,000 purchase price proposed in a postpetition sale agreement for certain stock owned by the debtor.[4] Other creditors then followed suit by filing objections to the proposed sale price, and ultimately the stock was sold for $1,150,000 which, of course, resulted in an $800,000 benefit to the debtor's estate. The *McLean* court concluded that the law firm's objection essentially called into play the propriety of the transaction, which, but for the law firms initial objection, may not have been considered.

The services provided by the creditor' attorneys in *U.S. Lines, Inc.* and *McLean Industries, Inc.*, obviously resulted in an "actual and demonstrable benefit" to the respective debtors' estates and therefore to their creditors.

As compared to the funds created for the benefit of the respective debtors' estates (and their creditors) through the applicants' efforts in *U.S. Lines, Inc.* and *McLean Industries*, Fox Rothschild's contribution in the case *sub judice*, at best, rendered a minor benefit to the Debtor's estate and little, if anything, to the Debtor's creditors. Indeed, if the Court were to grant Fox Rothschild's request for payment, it would receive 60–75% of the $24,000 to $30,000 fund allegedly created by its services. ˙Other administrative creditors and unsecured creditors, on the other hand, may receive little, if any, distri-

---

**4.** The Court notes that in *In re McLean Industries, Inc.*, as in the case *sub judice*, the law firm, rather than their creditor clients, filed the request for payment of fees and related expenses pursuant to subsections 503(b)(3) and (b)(4). That court noted that the other interested parties had not objected to that procedure, as the Objectors have here. *Id.*, 88 B.R. at 37. As discussed at footnote 3 *supra*, this Court does not believe that a law firm acting on behalf of its creditor clients is precluded from filing a § 503 request for payment of an administrative expense itself.

bution, and certainly will receive less than anticipated under the Debtor's confirmed Chapter 11 plan.[5] Thus, Fox Rothschild's contribution does not come close to satisfying the "substantial contribution" requirement of § 503(b)(3)(D). Even if it were a closer call, other factors weigh in favor of the denial of Fox Rothschild's requested payment.

■ In the first instance, it was incumbent upon Fox Rothschild to advise the interested parties of its intention to file its instant and rather significant request for payment of an administrative claim prior to the Court's approval of the Debtor's Third Modified Amended Disclosure Statement, and the dissemination of the Third Modified Amended Chapter 11 Plan for voting. *See In re Diberto*, 164 B.R. 1, 3 (Bankr.D.N.H.1993). This is especially true, since it appears that the other administrative creditors and unsecured creditors will receive a smaller distribution (or no distribution) than that which was set forth in the Debtor's disclosure statement and Chapter 11 plan, especially if the Court authorizes Fox Rothschild's request for payment of an administrative expense.

In the second instance, Fox Rothschild did not adduce any admissible evidence other than the Stipulation in support of its request for payment. While a court's own first-hand observance of the services provided may be a sufficient basis upon which to find a "substantial contribution, *Matter of Baldwin–United Corporation*, 79 B.R. 321, 343 (Bankr.S.D.Ohio 1987), and to some extent Fox Rothschild is correct that the Stipulation speaks for itself, the Court has no first-hand knowledge of the dynamics of the negotiations between Fox Rothschild and the Obermayer firm. Fox Rothschild has not established to the Court's satisfaction that it services leading up to the Court-approved Stipulation were anything more than an attempt to protect the interests of its own clients.

Finally, the Court is reluctant to conclude that services rendered objecting to a fee request and negotiating a fee reduction, absent some unusual circumstance—which is not present here, are the type of services upon which payment of attorneys fees under subsections 503(b)(3)(D) and (b)(4) should be authorized.[6] Attorneys must generally look to their own clients for payment. *Lebron v. Mechem Financial, Inc.*, 27 F.3d at 944; *In re U.S. Lines, Inc.*, 103 B.R. at 430. The negotiations, which occurred between Fox Rothschild and the Obermayer firm in the case *sub judice*, are the type of negotiations that occur between the attorneys of the various interested parties in every Chapter 11 case.

For all the above reasons, the Court will deny Fox Rothschild's request for payment of an administrative expense pursuant to § 503(b)(3)(D). An Order consistent with the foregoing conclusions accompanies this Opinion.

### *ORDER*

**AND NOW,** this 11th day of June 1996, upon consideration of Fox, Rothschild, O'Brien & Frankel's *Request For Payment of An Administrative Expense Pursuant To 11 U.S.C. § 503* (the "Request"), it is hereby

**ORDERED** for the reasons set forth in the accompanying Opinion, that the Fox Rothschild's Request shall be and hereby is Denied.

---

**5.** Fox Rothschild does not even suggest, nor could it, that its efforts in filing and prosecuting the objections "fostered and enhanced" the progress of the Debtor's reorganization.

**6.** As the Objectors point out, if their services in the underlying proceeding cause Fox Rothschild's request for payment to be denied, or the amount of the requested payment reduced, do they then have a viable claim for reimbursement under §§ 503(b)(3)(D) and (b)(4)?