**In re PHILADELPHIA
NEWSPAPERS, LLC,
et al., Debtors.**

No. 09–11204 Sr.

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 21, 2010.

452

Anne M. Aaronson, Dilworth Paxson LLP, Philadelphia, PA, for Philadelphia Newspapers, LLC, Dilworth Paxson LLP, Proskauer Rose LLP.

David F. Abernethy, Drinker Biddle & Reath LLP, Philadelphia, PA, for Citizens Bank of Pennsylvania.

D. Sam Anderson, Bernstein Shur, Portland, ME, for Stern Partners, Inc.

Michelle Hope Badolato, Brown & Connery LLP, Westmont, NJ, for Brown & Connery, LLP.

Stephen M. Baldini, Akin Gump Strauss Hauer & Feld LLP, New York, NY, for The Steering Committee of Secured Creditors.

James A. Bell, Bell & Bell LLP, Philadelphia, PA, for Emmaline Armstrong.

Gerald C. Bender, O'Melveny & Myers LLP, New York, NY, for Official Committee of Unsecured Creditors.

Thomas Daniel Bielli, Ciardi Ciardi & Astin, P.C., Philadelphia, PA, for Realty Associates Keystone Industrial Portfolio IV, L.P., a Delaware limited partnership, Sabrina Thomas.

John Robert Bielski, Willig Williams & Davidson, Philadelphia, PA, for International Association of Machinist and Aerospace Workers, Local Lodge 648.

Ralph P. Bocchino, Marshall Dennehey Warner Coleman & Goggi, Philadelphia, PA, for Northeast Times Newsweekly.

Barry E. Bressler, Schnader, Harrison, Segal & Lewis, LLP, Philadelphia, PA, for Arlin M. Adams.

Jeffrey M. Carbino, Thorp Reed & Armstrong, LLP, Philadelphia, PA, for Swope Cleanup Committee.

Michael A. Cataldo, Cibik & Cataldo, P.C., Philadelphia, PA, for Linda Gillespie.

Neal D. Colton, Cozen O'Connor, Philadelphia, PA, for Stern Partners, Inc.

George M. Conway, U.S. Trustee, Philadelphia, PA, for U.S. Trustee.

Brad Cooper, Cooper & Schaffer LLC, Philadelphia, PA, for Bobbie Clarke.

Richard J. Corbi, Proskauer Rose LLP, New York, NY, for Philadelphia Newspapers, LLC.

J. Conor Corcoran, Law Office of J. Conor Corcoran, Philadelphia, PA, for R. Bradley Maule.

Maire Corcoran, Bernstein Shur, Portland, ME, for Stern Partners, Inc.

Dawn M. Costa, Kent Cprek, Jennings Sigmond PC, Philadelphia, PA, for Carpenters Pension and Annuity Fund of Phila.

William Edward Craig, Morton & Craig, Moorestown, NJ, for Eastern Lift Truck Co., Inc.

Douglas N. Candeub, Morris James LLP, Wilmington, DE, for The McClatchy Co.

Ronald Lee Daugherty, Salmon Ricchezza Singer & Turchi LLP, Philadelphia, PA, for Emmaline Armstrong.

David A Deflece, Lamm Rubenstone LLC, Trevose, PA, for Key Equipment Finance, Inc.

Edward J. Didonato, Fox Rothschild LLP, Philadelphia, PA, for Upper Merion Area School Dist., Bernard W. Smalley.

Joseph Digiovanni, Kleeman & Diovanni, Philadelphia, PA, for Christopher Baxter.

Allen B. Dubroff, Jenkintown, PA, for Lawrence Mendte.

John M. Elliott, Elliott Greenleaf & Siedzikowski PC, Blue Bell, PA, for Philadelphia Newspapers, LLC.

Wayne A. Ely, Timothy M. Kolman and Associates, Penndel, PA, for Myra Belle Miller.

Michael Fagone, Bernstein Shur, Portland, ME, for Stern Partners, Inc.

John K. Fiorillo, West Chester, PA, for Hanmar Associates.

Andrew Jay Flame, Drinker Biddle Reath LLP, Wilmington, DE, for Citizens Bank of Pennsylvania, as Agent, Steering Group of Prepetition Secured Lenders, Philadelphia Media Network Inc.

Donald Goodfriend Frankel, U.S. Dept. of Justice, Newton, MA, for U.S. Environmental Protection Agency.

Alexis Freeman, Fred S. Hodara, Akin Gump Strauss Hauer & Feld LLP, New York, NY, for The Steering Committee of Secured Creditors.

Ian S. Fredericks, Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, DE, for Philly Papers LLC.

Alan F. Galerman, Galerman & Tabakin LLP, Jenkintown, PA, for Crystal Williams.

David A. Gaudioso, Meranze & Katz, P.C., Philadelphia, PA, for Newspaper & Magazine Employees Union and Philadelphia Publishers Pension Fund, Newspaper & Magazine Employees Union, Local 1414, Graphic Communications Council, Local 16–N.

Joseph T. Gauthier, UNICOM Systems, Inc., Mission Hills, CA, for Macro 4, Inc.

Ronald S. Gellert, Eckert Seamans Cherin & Mellott, LLC, Philadelphia, PA, for Official Committee of Unsecured Creditors.

Edmond M. George, Obermayer Rebmann Maxwell & Hippel, LLP, Philadelphia, PA, for Charter School Management, Inc.

Neal Goldstein, Freedman and Lorry, P.C., Philadelphia, PA, for United Independent Union–Newspaper Guild of Greater Philadelphia Pension Fund.

Helen Heifets, Bazefon Lee & Feldman PC, Philadelphia, PA, for Ace American Ins. Co.

Geoffrey R. Johnson, Sprague & Sprague, Philadelphia, PA, for Robert A. Brady, John J. Dougherty.

Jeremy R. Johnson, DLA Piper LLP, New York, NY, for Sonenshine Partners LLC.

Russell R. Johnson, III, Manakin–Sabot, VA, for PECO Energy Co.

Dana P. Kane c/o Liquidity Solutions, Inc., Hackensack, NJ, for Liquidity Solutions, Inc.

Andrew Charles Kassner, Drinker Biddle & Reath LLP, Philadelphia, PA, for Philadelphia Media Network Inc.

Robert J. Keach, Bernstein Shur, Portland, ME, for Stern Partners, Inc.

Brya M. Keilson, Eckert Seamans Cherin & Mellott, LLC, Philadelphia, PA, for Official Committee of Unsecured Creditors, J. Scott Victor, The Liquidation Trustee of The PN Chapter 11 Estate Liquidating Trust.

Maxwell S. Kennerly, The Beasley Firm, LLC, Philadelphia, PA, for 401 Restaurant Associates, LLC, Richard A. Sprague, Joan Krajewski, James W. Robinson, Jr.

John C. Kilgannon, Stevens & Lee, P.C., Philadelphia, PA, for PECO Energy Co., Teamsters Pension Trust Fund of Philadelphia and Vicinity.

Denise A. Kuhn, Office of Attorney General, Philadelphia, PA, for Commonwealth of Pennsylvania, Department of Revenue.

Greg T. Kupniewski, Flaster Greenberg PC, Philadelphia, PA, for Chester Community Charter School.

Jeffrey Kurtzman, Klehr Harrison Harvey Branzburg LLP, Philadelphia, PA, for Callowhill Partners, LLC, as agent for BET Associates, LLC.

Richard J. Kwasny, Kwasny Reilly Haft & Sacco, Yardley, PA, for Audobon News Agency, LLC, Timothy Howe.

Michael H. Landis, Smolow & Landis, Trevose, PA, for Lincoln Kor Center Joint Venture.

Jay M. Leffler, Zarwin Baum DeVito Kaplan Schaer & Toddy, Philadelphia, PA, for Maurice Johnson.

John P. Leon, Subranni Zauber LLC, Atlantic City, NJ, for SAP America, Inc.

Joel H. Levitin, Cahill Gordon & Reindel LLP, New York, NY, for White Birch Paper Co.

James L. Linsey, Cohen, Weiss and Simon LLP, New York, NY, for Communication Workers of America/The Newspaper Guild Local 38010, AFL–CIO, Newspaper Guild of Greater Philadelphia–CWA Local 38010.

Ben H. Logan, O'Melveny & Myers LLP, Los Angeles, CA, for Official Committee of Unsecured Creditors.

William J. Maffucci, Semanoff Ormsby Greenberg & Torchia LLC, Huntingdon Valley, PA, for Colwick Venture, LLC.

Michael A. Maricco, Pension Benefit Guar. Corp. Office of the Chief Counsel, Washington, DC, for Pension Benefit Guar. Corp.

Gerard J. Martillotti, Jerry Martillotti & Associates, Philadelphia, PA, for Harriet Hueitt.

Shanna McCann, Chance & McCann LLC, Woodstown, NJ, for Nora Fleischner.

Daniel T. McGrory, Pizonka, Reilley, Bello & McGrory, P.C., King of Prussia, PA, for Upper Merion Township.

Melanie McLaughlin, O'Melveny & Myers LLP, New York, NY, for Official Committee of Unsecured Creditors.

Lawrence G. McMichael, Dilworth Paxson LLP, Philadelphia, PA, for Philadelphia Newspapers, LLC, Dilworth Paxson LLP.

Vincent Melchiorre, Philadelphia, PA, for Linda Gillespie.

Michael G. Menkowitz, Fox, Rothschild, LLP, Philadelphia, PA, for Delage Landen Financial Services.

Michael T. Mervis, Proskauer Rose LLP, New York, NY, for Philadelphia Newspapers, LLC.

Allison E. Meyer, Proskauer Rose LLP, New York, NY, for Philadelphia Newspapers, LLC.

Robert S. Miller, Wapner Newman Wigrizer Brecher & Miller, Philadelphia, PA, for Marlene A. Anderson.

Gregory Milmoe, Skadden Arps Slate Meagher&Flom LLP c/o Davis Lee Wright, Wilmington, DE, for Rayco, LLC.

Adrian J. Moody, Moody & Shields Group LLC, Philadelphia, PA, for James M. DeLeon.

Susan A. Murray, Freedman & Lorry PC, Philadelphia, PA, for Newspaper Guild of Greater Philadelphia–CWA Local 38010, United Independent Union–Newspaper Guild of Greater Philadelphia Pension Fund, Newspaper & Magazine Employees Union and Philadelphia Publishers Pension Fund.

Vicente Matias Murrell, Office of the Chief Counsel, Washington, DC, for Pension Benefit Guar. Corp.

Michelle McMahon, Bryan Cave LLP, New York, NY, for CWA/ITV Negotiated Pension Plan.

Claiborne S. Newlin, Meranze and Katz, P.C., Philadelphia, PA, for Graphic Communications Conference, Local 14–M.

Orly Nhaissi, O'Melveny & Myers LLP, New York, NY, for Official Committee of Unsecured Creditors.

Lauren M. Nonnemacher, DLA Piper LLP, Philadelphia, PA, for The Associated Press.

Catherine Glenn Pappas, Dilworth Paxson LLP, Philadelphia, PA, for Philadelphia Newspapers, LLC.

Paul J. Pascuzzi, Felderstein, Fitzgerald, Willoughby & Pascuzzi LLP, Sacramento, CA, for The McClatchy Co.

Andrea B. Paul, Harper & Paul, Philadelphia, PA, for Mike Bruton.

Mark D. Pfeiffer, Buchanan Ingersoll & Rooney PC, Philadelphia, PA, for Swope Cleanup Committee.

Robyn F. Pollack, Saul Ewing LLP, Philadelphia, PA, for PA–1601 Market Street Limited Partnership.

Paul V. Possinger, Proskauer Rose, LLP, Chicago, IL, for Philadelphia Newspapers, LLC.

Abid Qureshi, Akin Gump Strauss Hauer & Feld LLP, New York, NY, for The Steering Committee of Secured Creditors.

Natalie D. Ramsey, Montgomery McCracken Walker and Rhoads, Philadelphia, PA, for CWA/ITU Negotiated Pension Plan.

Thomas W. Repczynski, Bean Kinney & Korman, P.C., Alexandria, VA, for Graphic Communications Holdings, Inc.

Deirdre M. Richards, Lamm Rubenstone LLC, Trevose, PA, for Key Equipment Finance, Inc.

Paul R. Rosen, Spector Gadon & Rosen, P.C., Philadelphia, PA, for Alycia Lane.

Bruce Michael Rotfeld, Bruce M. Rotfeld P.C., Philadelphia, PA, for Robert Swanlund.

Amy L. Santamaria, Kaplin Stewart Meloff Reiter & Stein PC, Cherry Hill, NJ, for Cherry Umbrella, LLC, by its Property Manager, Endurance Real Estate Group, LLC.

Gary M. Schildhorn, Eckert Seamans Cherin & Mellott, LLC, Philadelphia, PA, for Official Committee of Unsecured Creditors.

Mark J. Schwemler, Elliott Greenleaf & Siedzikowski PC, Blue Bell, PA, for Philadelphia Newspapers, LLC.

Sergio I. Scuteri, Capehart Scatchard, P.A., Mount Laurel, NJ, for Moon Site Management.

Linda M. Shick, Naftulin and Shick PC, Doylestown, PA, for Brenna Millward.

William A. Slaughter, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for William A. Graham.

Holly Elizabeth Smith, Ciardi Ciardi & Astin, Philadelphia, PA, for Inserts East, Inc., Realty Associates Keystone Industrial Portfolio IV, L.P.

Jeffrey W. Soderberg, Mandracchia & McWhirk LLC, Skippack, PA, for 2571 Associates, LP.

Alan Starker, Kats van der Veen Baccari & Associates, Feasterville, PA, for Eugenia Gross.

Brad S. Tabakin, Galerman & Tabakin LLP, Jenkintown, PA, for Crystal Williams.

Jennifer M. Taylor, O'Melveny & Myers LLP, San Francisco, CA, for Official Committee of Unsecured Creditors.

Mark K. Thomas, Proskauer Rose LLP, Chicago, IL, for Philadelphia Newspapers, LLC.

Prince Altee Thomas, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for Graphic Communications Holdings, Inc.

Holly C. Thurman, Weltman, Weinberg & Reis, Pittsburgh, PA, for General Electric Commercial Finance.

Robert Thomas Vance, Jr., Law Offices of Robert T. Vance Jr., Philadelphia, PA, for Gari Nan Brindle.

Nina M. Varughese, Pepper Hamilton LLP, Philadelphia, PA, for Philadelphia Media Network Inc.

Nancy A. Walker, McNeill & Walker, Philadelphia, PA, for Newspaper Guild of Greater Philadelphia–CWA Local 38010.

Robert A. Weber, Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, DE, for Philly Papers LLC.

Stephanie Wickouski, Drinker Biddle & Reath LLP, New York, NY, for Citizens Bank of Pennsylvania, as Agent.

Lawrence R. Woehrle, Sprague & Sprague, Philadelphia, PA, for Richard A. Sprague.

Davis Lee Wright, Skadden Arps Slate Meagher & Flom LLP, Wilmington, DE, for Rayco, LLC.

Mark G. Yoder, Bingaman, Hess, Coblentz and Bell, P.C., Wyomissing, PA, for Suburban Management Co., Inc.

OPINION

STEPHEN RASLAVICH, Chief Judge.

### Introduction

Before the Court is the Administrative Claim Request of Bruce Toll Pursuant to 11 U.S.C. § 503(a) and (b) (the "Claim"). Toll seeks the allowance of an administrative claim in the amount of $65,947.34 for attorneys' fees and costs. The Acting United States Trustee (the "Trustee") and the Official Committee of Unsecured Creditors (the "Committee") filed objections ("Objections") to the Claim. The steering group of prepetition secured lenders (the "Steering Group") and Citizens Bank of Pennsylvania, in its capacity as the administrative and collateral agent for the Steering Group, filed a Joinder in the Objections. A hearing on the Claim was held on July 29, 2010. At the close of the hearing, the Court took the matter under advisement. Upon consideration, the Court shall grant the Claim in the reduced amount of $24,000.

### BACKGROUND

#### Filing for Bankruptcy

On February 22, 2009, Philadelphia Newspapers, LLC and its related debtor-entities (the "Debtors")[1] filed for relief under Chapter 11 of the Bankruptcy Code.[2] The Debtors own and operate numerous print and online publications in the Philadelphia area, including Philadelphia's two major newspapers (i.e., the Philadelphia Inquirer and the Philadelphia Daily News) and Philly.com. *In re Philadelphia Newspapers, LLC*, 418 B.R. 548, 553

---

1. The Debtors consist of PMH Acquisition, LLC; Broad Street Video, LLC; Philadelphia Newspapers, LLC, Philadelphia Direct, LLC; Philly Online, LLC.; Broad Street Publishing, LLC; Philadelphia Media, LLC; and Philadelphia Media Holdings, LLC ("PMH"). The Debtors' cases are being jointly administered. See Docket Entry No. 42 (Order Directing

Joint Administration of the Debtors' Related Chapter 11 Cases).

2. The exception to this statement is that PMH, which is the parent company of all of the rest of the Debtors, commenced its bankruptcy case on June 10, 2009.

(E.D.Pa. Nov.10, 2009), aff'd, 599 F.3d 298 (3d Cir.2010).

### The DIP Loan and Toll

■ Prior to filing their cases, the Debtors knew that they would need a debtor-in-possession loan ("DIP loan").[3] Transcript, dated July 29, 2010 ("Tr. 7/29/10") at 17. The Debtors' pre-petition lenders were a consortium of lenders (collectively referred to hereinafter as the "Lenders"), with Citizens Bank of Pennsylvania acting as the administrative and collateral agent. *In re Philadelphia Newspapers, LLC.*, 599 F.3d 298, 301 (3d Cir.2010). The Lenders hold first priority liens on substantially all of the Debtors' assets. *Id.* The Lenders offered to provide Debtors with a DIP loan but the terms of the loan had a provision which the Debtors refused to accept. Tr. 7/29/10 at 18. That provision was that any Chapter 11 plan which the Debtors filed had to be approved in advance by the Lenders. *Id.* When the Debtors filed their bankruptcy cases, their intent was to propose a Chapter 11 plan that would enable them to conduct an auction at which potential buyers would be required to bid cash and be precluded from credit bidding.[4] *Id.* at 17–18. The goal was for the Debtors to raise as much cash as possible in hopes that the Lenders would elect to take cash

instead of an equity interest in the Debtors. *Id.* at 17. However, the Lenders opposed such a plan. *See In re Philadelphia Newspapers, LLC,* 2009 WL 3242292, at *2 (Bankr.E.D.Pa. Oct. 8), rev'd in part on other grounds, 418 B.R. 548 (E.D.Pa. Nov.10, 2009), aff'd, 599 F.3d 298 (3d Cir. 2010); see also Tr. 7/29/19 at 20.[5] Consequently, the Debtors needed a DIP loan that did not require them to obtain the Lenders' approval before filing a plan. Tr. 7/29/10 at 18. To obtain such a loan, the Debtors approached Bruce Toll because they believed "he was the most liquid party that [they] had available to [them] that could actually do what [they] wanted him to do, on the time frame that [they] need-ed[.]" *Id.*

From sometime prior to the Debtors' bankruptcy filings until mid-August of 2009, Toll owned approximately 20 percent equity in PMH. *In re Philadelphia Newspapers, LLC,* 599 F.3d 298, 301 (3d Cir. 2010). In addition, from June of 2007 through mid-August of 2009, he was the Chairman of PMH. *In re Philadelphia Newspapers, LLC,* 2009 WL 3242292, at *10 (Bankr.E.D.Pa. Oct. 8), rev'd in part on other grounds, 418 B.R. 548 (E.D.Pa. Nov.10, 2009), aff'd, 599 F.3d 298 (3d Cir.

---

**3.** The Debtors were able to operate after filing their bankruptcy cases without a DIP loan; however, they knew from the commencement of their cases that they would need such a loan and they eventually did. Tr. at 18.

**4.** As the Third Circuit explained in *In re Philadelphia Newspapers, LLC.*, 599 F.3d 298 (3d Cir.2010), "[a] credit bid allows a secured lender to bid its debt in lieu of cash." *Id.* at 302 n. 4.

**5.** According to Lawrence McMichael, Esquire ("McMichael"), who is the Debtors' counsel and was the sole witness at the hearing on the Claim, if the lenders had been able to control the Debtors' Chapter 11 plan, the Debtors would have been unable to prevent the Lend-

ers from credit bidding. On this point, McMichael testified as follows:

> The fact that only 3 of our original 40 lenders are still in as equity owners of the debtors' business going forward, to me, is extremely telling. And illustrates the benefit of that process. That process wouldn't have happened without a non-coercive DIP. **If we had been forced to borrow money from the senior lenders on the terms that they originally wanted, we never would have gotten there, because they would have controlled the plan; there would have been a credit bid,** and all 40 lenders would now own the debtor, the cash would not have been on the table to pay them.

Tr. 7/29/10 at 20 (underlining added).

2010); see also Transcript, dated October 1, 2009 ("Tr. 10/1/09"),[6] at 84.

In response to the Debtors' request, Toll agreed to provide a DIP loan to the Debtors and he retained the law firm of Klehr, Harrison, Harvey, Branzburg & Ellers LLP (the "Klehr, Harrison Firm") to negotiate and document it. Tr. 7/29/10 at 18. A commitment letter, dated February 10, 2009, contains an attachment which summarizes the terms and conditions at which the DIP loan, through Toll, was being offered.[7] See Toll Exhibit 1. On February 22, 2009, the Debtors filed a motion requesting Court approval of the DIP loan which was arranged by Toll.[8] See Motion of the Debtors for Entry of Interim and Final Orders: (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Granting Liens and Superpriority Claims, (C) Authorizing Use of Cash Collateral, (D) Granting Adequate Protection to Pre-petition Senior Lenders and (E) Scheduling a Final Hearing, Docket Entry No. 22.

### Benefit of DIP loan Involving Toll

At the hearing on the Claim, McMichael was asked on direct examination to testify regarding the benefit which the DIP loan from Toll provided to the Debtors' estates and their creditors. He stated: "From our perspective, the presence of an alternative DIP loan was the key leverage that the debtors had to get into ultimately a mediation, and make a deal with our incumbent pre-petition lenders." Tr. 7/29/10 at 18. Expounding further on this point, McMichael testified:

> We did make that deal. And as the Court knows, that deal resulted in a DIP loan without the critical provision in it that the lenders, the DIP lenders would control the plan that the debtors could propose. The debtors were free to propose whatever plan they wanted.

> And our ability to get that done was, in my view, 100 percent dependent on the fact that we had an alternative to the senior lenders as a DIP lender, that being Mr. Toll. We did try to replace Toll with a bank ... but for the early part of the case, Mr. Toll was the lender.

*Id.* at 19.

### Stalking Horse

While the Debtors were negotiating with Toll for a DIP loan, they were also trying to put "together a transaction by which Mr. Toll and others would put up cash to act as a stalking horse." Tr. 7/29/10 at 22. As a result of the negotiations, the Debtors entered into an asset purchase agreement, dated August 20, 2009 (the "Asset Purchase Agreement"), with Philly Papers, LLC (the "Stalking Horse Bidder"). *In re Philadelphia Newspapers, LLC*, 2009 WL

---

6. This transcript is from the "final hearing on the DIP loan agreement between Citizens Bank as agent and the [D]ebtors." Tr. 10/1/09 at 4.

7. The commitment letter is from Newspring Capital, LLC, which McMichael explained, was the entity which Toll arranged to act as the agent for the DIP loan. Tr. 7/29/10 at 32–33.

8. A Debtor–in–Possession Credit, Guaranty and Security Agreement, dated February 22, 2009, was attached as Exhibit A to the above-mentioned motion. This agreement was introduced as Toll Exhibit 2 at the hearing on the Claim. See Toll Exhibit 2. This Agreement is between: (i) Philadelphia Newspapers, LLC as the *borrower;* (ii) PMH Acquisition, LLC; Broad Street Video, LLC; Philadelphia Direct, LLC; Philly Online, LLC.; Broad Street Publishing, LLC; Philadelphia Media, LLC; and Philadelphia Media Holdings, LLC ("PMH") as the *guarantors;* (iii) Callowhill Partners, LLC, as the *administrative agent;* and (iv) "The Lenders Named Herein," as the *lenders. Id.* The last page of the exhibit list the "Lenders" as BET Associates, LP. *id.* The signature line for the Lenders bears the name of "Bruce E. Toll." *Id.*

3242292, at *1 (Bankr.E.D.Pa. Oct. 8), rev'd in part on other grounds, 418 B.R. 548 (E.D.Pa. Nov.10, 2009), aff'd, 599 F.3d 298 (3d Cir.2010); see also Tr. 10/1/09 at 84. Toll, along with the Carpenters Pension and Annuity Fund of Philadelphia and Vicinity, held a majority interest in the Stalking Horse Bidder. *In re Philadelphia Newspapers, LLC,* 599 F.3d 298, 301 (3d Cir.2010). In connection with the negotiations between the parties on the terms of the Asset Purchase Agreement, Toll was represented by the Klehr, Harrison Firm which is the same firm that represented him in connection with his negotiations with the Debtor regarding the DIP loan. Tr. 10/1/09 at 85–86.

### The Debtors' Decision to Pursue a DIP Loan with a Bank Rather than with Toll

The Debtors subsequently decided to pursue a DIP loan with a bank instead of Toll. Tr. 7/29/10 at 23. McMichael explained the reasoning behind this decision, stating as follows:

> [E]very time we walked into Court, the DIP loan was characterized by as an insider, or, you know DIP loan, and we thought that, particularly with the finalization of the stalking horse agreement, with Mr. Toll and others, that it was best to try to separate that from the DIP loan. And we tried to find a bank to do it[.]

*Id.* at 25. See also Transcript, dated 8/17/10, at 17[9] (McMichael's testimony that the Debtors decided to pursue a DIP loan with a bank instead of Toll because "of the volume" of criticism which they were receiving for "proposing a DIP loan provided by an insider.").

The bank with which the Debtors ended up negotiating for a DIP loan was Republic First Bank. One of the requirements included in the draft commitment or term sheet for the DIP loan from Republic First Bank was that "there be a major participant for a significant portion" of the DIP loan to the Debtors. Tr. 7/29/10 at 24. The fund that agreed to partner with Republic First Bank to fund the DIP loan was Tennenbaum Capital Partners, LLC ("Tennenbaum"). Tr. 7/29 at 7, 24–25. Both Republic First Bank and Tennenbaum incurred out-of-pocket fees and expenses in connection with the due diligence which they had performed in connection with the DIP loan.

### Debtors Obtained their DIP Loan From the Lenders

Ultimately, the Debtors resolved matters with the Lenders and obtained a commitment from them for a DIP loan. The Lenders agreed to extend a DIP loan to the Debtors without the condition upon which the Lenders originally had been insisting, namely that they have the right to pre-approve any reorganization plan before the Debtors filed it. See Docket Entry No. 1006. At that point, the Debtors no longer needed a financing commitment from Republic First Bank and Tennenbaum. Tr. 7/29/10 at 24; see also Docket Entry No. 1223 at ¶ 4 (explaining that, on or about August 26, 2009, the Debtors reached an agreement in principle with the Lenders concerning the terms of a DIP loan). On August 28, 2009, a stipulation (the "DIP Loan Stipulation") was filed by and between the Debtors, Citizens Bank, the Steering Group and the Official Committee for Unsecured Creditors stating, inter alia, that Citizens had agreed to pro-

---

**9.** This transcript is from the hearing on, inter alia, the Amended Request of Republic First Bank for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. 503(b). See Docket Entry Nos. 2437.

vide a DIP loan to the Debtors. See Docket Entry No. 1006.

### Requests for Fees and Expenses Related to the DIP Loan

#### (i) Republic First Bank

In anticipation of Republic First Bank incurring fees and expenses in connection with the process of entering into a DIP Loan, the Debtors filed a motion, on July 30, 2009, seeking reimbursement of such fees and expenses for the bank. Docket Entry No. 822 (Motion for the Entry of an Order Pursuant to 11 U.S.C. § 105 and 363(b) Authorizing Payment of Fees and Expenses for Prospective Debtor–in–Possession Financing). The Debtors based the motion on §§ 105 and 363 of the Code, asserting that their request for the reimbursement of fees and expenses sought in the motion "represent[ed] a sound exercise of business judgment." *Id.* ¶ 14. In the motion, the Debtors sought Court approval to reimburse "their prospective lender for reasonable, documented, out-of-pocket third party fees and expenses . . . up to a total of $300,000 in connection with the Debtors' efforts to obtain a $15 million debtor-in-possession financing . . . commitment." *Id.* In the motion, the Debtors stated in relevant part:

> 2. The Debtors and their professionals have been negotiating the potential for a DIP Facility commitment from several prospective investors and lenders. The Debtors anticipate obtaining a commitment for a DIP Facility, following a period of due diligence. . . .
>
> 3. From the original prospective investors and lenders with whom the Debtors discussed potential debtor-in-possession financing, including their current Senior Secured Lenders, the Debtors selected the lender who they believed provided the most attractive financing options. This lender, who has met with the Debt-

ors' management and has been provided with access to an electronic data room, has been negotiating with the Debtors as to the terms on which a DIP Facility commitment will be made. **This prospective lender, Republic First Bank (the "Anticipated Lender") will be invit-**ed to conduct more comprehensive due diligence and the Debtors will negotiate with the Anticipated Lender toward a definitive DIP Facility commitment.

> 4. **By this Motion, the Debtors seek Court approval to reimburse the Anticipated Lender's reasonable due diligence fees and expenses—a condition required by the Anticipated Lender before it will conduct such due diligence.**

*Id.* ¶¶ 2–4 (bolding added). Following a hearing, the Court issued an Order, dated August 11, 2009, granting the motion but *limiting* the reimbursement of fees and expenses to a total amount of $100,000. Docket Entry No. 903.

On August 21, 2009, the Debtors filed a motion for reconsideration of the aforementioned $100,000 cap. Docket Entry No. 954. The Debtors asked the Court to increase the cap to $200,000. See *id.* However, before the hearing was held on the motion for reconsideration, the Debtors and the Lenders reached the agreement mentioned above regarding the DIP loan and other issues. See Docket Entry No. 1006. In the DIP Loan Stipulation, the parties specifically addressed the Debtors' motion for reconsideration of the $100,000 cap. See *id.* at pg. 15. The stipulation provided that the Debtors' motion for reconsideration of the $100,000 cap "shall be deemed withdrawn," but that Republic First Bank "may file a motion and seek allowance of an administrative expenses" in addition to the $100,000 already

granted by the Court.[10] *Id.* Pursuant to this provision, Republic First Bank filed a request on August 13, 2010, seeking the allowance of an administrative claim in the total amount of $159,960.79 (in addition to the $100,000 which the Court originally approved) pursuant to 11 U.S.C. § 503(b), for its "Due Diligence Fee" and the legal expenses which it incurred in responding to and defending against discovery that was propounded against it in connection with the DIP Loan. See Docket Entry No. 2437 (Amended Request of Republic First Bank for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. 503(b)). A hearing on this request was held on August 17, 2010. At the hearing, the evidence showed that Republic First Bank's out-of-pocket expenses to third parties in connection with the DIP loan did not exceed $110,000. Tr. 8/17/10 at 45, 47. As the Court noted on the record at the hearing, the only un-reimbursed third party out-of-pocket expenses which Republic First Bank had were $9,960.79. *Id.* at 71. The Court granted the bank half of this amount in light of the following observations: (i) Republic First Bank exceeded the $100,000 cap which it knew the Court had imposed; but (ii) it had incurred significant legal fees in connection with defending against the discovery that was propounded against it in connection with the DIP loan. *Id.* at 71–72; see also Docket Entry No. 2447 (Order,

dated August 18, 2010, allowing Republic First Bank an Administrative Expense Claim "in the reduced amount of $4,980.40").

### (ii) Tennenbaum

Tennenbaum also incurred out-of-pocket expenses in performing its due diligence in connection with the DIP loan. On October 7, 2009, Tennenbaum filed an application, based on Code § 503(b), requesting the allowance of an administrative claim in the amount of $14,012.50 for the out-of-pocket expenses which it incurred in the form of attorneys' fees in connection with the DIP loan. Docket Entry No. 1223. By Order, dated October 30, 2009, the Court granted the application.

### (iii) Toll

Toll filed his Claim on October 15, 2009. After the Trustee filed his objection to the claim, a hearing on the claim and objection was scheduled for December 21, 2009. Docket Entry No. 1539. That hearing was continued to February 1, 2010 but, prior to that date, the Debtors filed a notice stating that the hearing on Toll's Claim and the objections thereto was "continued generally" and that notice of the rescheduled hearing would be "filed when a new hearing date has been scheduled." Docket Entry No. 1660 ("Notice of Adjournment of Hearings Scheduled for February 1, 2010 at 2:00 P.M.").[11] *See also* Docket Entry

---

10. With regard to the Debtor's motion for reconsideration of the $100,000 cap, the DIP Loan Stipulation provided as follows:

> 5. *The RFB Fee Reconsideration Motion.*
> a) Upon approval of this Stipulation by the Bankruptcy Court, the RFB Fee Reconsideration Motion shall be deemed withdrawn. RFB and Tennenbaum Capital Partners, LLC may file a motion and seek allowance of an administrative expense claim (in addition to the $100,000 payment to RFB already approved by the Bankruptcy Court). All Parties and other parties-in-interest in the Bankruptcy Case reserve their rights to

object to any such request for allowance of administrative expense claim filed by RFB. b) The Debtors shall immediately inform RFB to cease all underwriting, due diligence, drafting of documents and other actions related to possible debtor-in-possession financing for the Debtors.
> Docket Entry No. 1006, at pg. 15.

11. Prior to February 1, 2010, the Debtors had already submitted their motion for court approval of the bidding procedures which they sought in connection with the anticipated public auction of their assets. See Docket

No. 1667 (docket entry noting that the hearing on Toll's claim was "continued generally."). By Notice dated July 15, 2010, the Debtors rescheduled the hearing on Toll's claim and the Trustee's Objection thereto for July 29, 2010. See Docket Entry No. 2342. As noted above, the hearing was held and the matter was taken under advisement. See Docket Entry No. 2402.

## DISCUSSION

Toll asserts that he is entitled to the allowance of an administrative claim in the amount of $65,947.34 because: (1) he incurred reasonable costs and attorneys' fees in the aforementioned amount in connection with the DIP loan; and (ii) the availability of the DIP loan from him "conferred a material benefit upon the Debtors and their estates and constituted a substantial contribution to [the Debtors'] cases within the meaning of § 503(b)(3)(D)." Claim ¶¶ 2–6. The Trustee contends that Toll's claim should be disallowed for the following reasons: (1) Toll is an "insider" as that term is defined in 11 U.S.C. § 101(31); (2) Toll made no substantial contribution to the Debtors' cases but "merely engaged in negotiations to arrange for DIP financing for his own benefit" and to "protect his own interests and/or the interests of insiders." Trustee Objection at ¶¶ 5–7. The Committee argues, inter alia, that Toll's claim should be disallowed because: (1) the "proposed, non-consensual" DIP loan for which he seeks an administrative claim for his fees

and expenses "was never presented to the Court and never had a realistic chance of approval." Committee Objection ¶ 1. The Committee further argues that the Court authorized a payment of $100,000 for fees and expenses related to the Debtors' proposed DIP financing with First Republic Bank and that it is "highly inappropriate" for Toll to seek fees in addition to this amount particularly since the unsecured creditors will receive only a minimal distribution on their claims. Committee's Objection ¶ 2.

### The Statutory Basis for Toll's Claim

■ Toll seeks allowance of his claim pursuant to § 503(b)(3)(D). Claim ¶ 6. However, the fees and expenses for which he seeks compensation are fees and expenses for professional services rendered by his attorneys. Therefore, his Claim technically falls within the scope of § 503(b)(4) which works in tandem with § 503(b)(3)(D). These subsections provide, in pertinent part:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

\* \* \*

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equi-

---

Entry No. 1007 ("Debtors' Motion for an Order: (A) Approving Procedures for the Sale of Certain of the Debtors' Assets; (B) Scheduling an Auction; (C) Approving Assumption and Assignment Procedures; (D) Approving Form of Notice; and (E) Granting Related Relief") The Court's decision on that motion had been appealed and the District Court had issued its decision on the matter. See Docket Entry Nos. 1234, 1235, 1249 & 1414. The

Lenders' appeal to the Third Circuit was pending.

The Third Circuit subsequently issued its decision. On June 28, 2010, a confirmation hearing was held on the Debtors' Fourth Amended Joint Plan of Reorganization and the plan was confirmed. See Docket Entry No. 2253 ("Order Confirming Fourth Amended Joint Chapter 11 Plan as of June 28, 2010").

ty security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

\* \* \*

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph ... (D) ... of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

11 U.S.C. § 503(b)(3)(D) & (b)(4). As these statutory provisions reveal, a prerequisite to the allowance of an administrative claim under § 503(b)(4) is a finding of "substantial contribution" by an entity coming within the scope of § 503(b)(3)(D). *See Lebron v. Mechem Financial, Inc.,* 27 F.3d 937, 943 (3d Cir.1994) (observing that § 503(b)(4) "authorizes awards of legal and accounting fees only in situations coming within the scope of § 503(b)(3)[.]"); *see also In re ASARCO, LLC,* 2010 WL 3812642, at \*10 (Bankr.S.D.Tex. September 28, 2010) (ruling that movants were not entitled to recover legal fees or expenses under § 503(b)(4) absent a finding that they made a substantial contribution pursuant to § 503(b)(3)(D)); *In re Oxford Homes, Inc.,* 204 B.R. 264, 267 (Bankr. D.Me.1997) ("A finding under § 503(b)(3)(D) that Connell, as a creditor, made a substantial contribution to [the debtor's] reorganization is a prerequisite to administrative allowance of his counsel's fees under § 503(b)(4)."). Consequently, the Court must find that Toll made a substantial contribution to the Debtors'

cases for him to be entitled to recover any amount on his Claim.

### Substantial Contribution Standard

 According to the Third Circuit, the test for " 'determining whether there has been a "substantial contribution" pursuant to § 503(b)(3)(D)' " is "whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron,* 27 F.3d at 944 (quoting *In re Lister,* 846 F.2d 55, 57 (10th Cir.1988)). *In Aerosmith, Inc. v. Carco Electronics (In re Carco Electronics),* 346 B.R. 377 (Bankr.W.D.Pa.2006), the Court stated:

> For a contribution to qualify as "substantial", it must be more than an incidental contribution that arose from actions the applicant has taken in furtherance of its own interest. An applicant is presumed to have acted in furtherance of its own interest until it satisfies the court that its actions transcended self-interest. The term "substantial contribution" should be applied in a manner that excludes reimbursement for actions taken primarily to serve the applicant's interest and which it would have taken absent an expectation of reimbursement from the bankruptcy estate.

*Id.* at 387 (citations omitted). *See also Lebron,* 27 F.3d at 943–44 (explaining that "[t]he services engaged by creditors, creditor committees and other parties interested in a reorganization are presumed to be incurred for the benefit of the engaging party and are reimbursable if, but only if, the services 'directly and materially contributed' to the reorganization.").

 Importantly, a bankruptcy court "has wide discretion to determine the amount of expenses to be awarded under

§ 503." [12] *In re Glickman, Berkowitz, Levinson & Weiner, P.C.,* 196 B.R. 291, 294 (Bankr.E.D.Pa.1996) *(citing In re Lister,* 846 F.2d 55, 56 (10th Cir.1988), *citing In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1252 (5th Cir.1986)). *See also Smith v. Mirant Corporation (In re Mirant Corporation),* 308 Fed.Appx. 824, 828 (5th Cir.2009) (observing that a bankruptcy court has "broad discretion" in determining fee awards under § 503(b)(4) and concluding that the bankruptcy court did not abuse its discretion in reducing a fee award to a law firm under § 503(b)(4) from $645,146.64 to $15,000). Moreover, the "inquiry concerning the existence of a substantial contribution is one of fact, and it is the bankruptcy court that is in the best position to perform the necessary fact finding task." *Lebron,* 27 F.3d at 946.

### Application of "Substantial Contribution" Standard

■ As noted above, Toll owned approximately 20 percent equity in and was Chairman of PMH when he incurred the fees and expenses for which he is seeking payment in his Claim. Consequently, at the relevant time, Toll was an insider of PMH as that term is defined in Code § 101(31)(b). Because of his positions as an equity holder and Chairman of PMH, Toll had a significant self-interest in promoting a reorganization of the Debtors that was not encumbered by the condition which the Lenders sought to impose on them in connection with a DIP loan (*i.e.,* that any Chapter 11 plan which the Debtors proposed had to be approved in advance by the Lenders). Therefore, in seeking to provide the Debtors with a DIP loan other than that initially being offered by the Lenders, Toll was acting, to a large extent, to further his own self-interest and that of the other insiders. This conclusion is buttressed by the undisputed fact that, at the same time that he was negotiating the DIP loan, he was also negotiating with the Debtors to act as the Stalking Horse Bidder and negotiating the terms of the Asset Purchase Agreement.

As an insider, Toll also had much of the information at his fingertips or his disposal that he needed to negotiate and reach an agreement regarding the DIP loan. Because of this, he had no need to engage in the same type or degree of due diligence as Republic First Bank or Tennenbaum. Therefore, his fee and expenses with regard to the DIP loan should be significantly less than the fees and expenses incurred by Republic First Bank or Tennenbaum.

■ It is also evident that, to a large extent, Toll was acting in his own self-interest when he incurred the $65,947.34 in attorneys' fees and expenses in connection with the DIP loan. Indeed, the extent of his legal fees undercuts any argument to the contrary. He expended significant legal fees to have the terms of the DIP loan negotiated and documented in a manner that was favorable to him. He did so without imposing any requirement on the Debtors ahead of time, or requiring them to make any request to the Court, for the reimbursement of his professional fees. In this regard, his actions are in stark contrast to those of Republic First Bank, a non-insider, which required the Debtors to seek Court approval of its fees as a condition precedent to performing due diligence

**12.** The "determination of whether or not to allow any administrative expenses under § 503(b)(3)(D) is left to the bankruptcy court's discretion." *In re Glickman, Berkowitz, Levinson & Weiner, P.C.,* 196 B.R. 291, 294 (Bankr.E.D.Pa.1996) *(citing In re Lister,* 846 F.2d 55, 56 (10th Cir.1988)).

for a DIP loan.[13] See Debtors' Motion for the Entry of an Order Pursuant to 11 U.S.C. § 105 and 363(b) Authorizing Payment of Fees and Expenses for Prospective Debtor–in–Possession Financing ¶ 4 ("By this Motion, the Debtors seek Court approval to reimburse the Anticipated Lender's reasonable due diligence fees and expenses—a condition required by the Anticipated Lender before it will conduct such due diligence.").

Further, and of critical importance, is the fact that the likelihood that any DIP loan involving Toll would be approved by this Court was nearly non-existent. Firstly, the standard for obtaining authorization for a postpetition loan with a superpriority priming lien under the Third Circuit's decision in *Resolution Trust Corporation v. Swedeland Development Group, Inc. (In re Swedeland Development Group, Inc.)*, 16 F.3d 552 (3d Cir.1994), is very difficult to satisfy. Nothing in the record before the Court suggests that the Debtors or Toll were in any way capable of meeting the *Swedeland* standard. Secondly, the fact that Toll was an insider made it even less likely that a DIP loan funded by him could be approved. Therefore, while Toll may have provided some benefit to the Debtors' estates and their creditors by "getting the ball rolling" to enable the Debtors to ultimately obtain a DIP loan that would be approved by the Court, there was never a realistic chance that Toll's DIP loan would be the loan that would carry the Debtors through their reorganization. Even the Debtors recognized this fact as shown by their decision to seek a DIP loan with a non-insider bank rather than Toll.

For these reasons, the Court concludes, in the exercise of its discretion, that Toll conferred a substantial benefit on the Debtors' estates and their creditors in providing an alternative, at the beginning of the Debtors' cases, to a DIP loan with the Debtors' Lenders. However, the value of that benefit does not equate to the $65,947.34 he seeks.

## CONSIDERATION OF THE TIME, NATURE, EXTENT AND VALUE OF PROFESSIONAL SERVICES RENDERED BY THE KLEHR, HARRISON FIRM

■ Exhibit "A" to Toll's Claim is an invoice from the Klehr, Harrison Firm to Bruce Toll for legal services for "Debtor–in–Possession Financing." See Exhibit "A" to Claim. The entries on the invoice date from February 5, 2009 through August 6, 2009. There are no entries between April 1, 2009 and July 12, 2009. Since the Debtors had undoubtedly commenced their discussions with Republic First Bank for a DIP Loan by July 13, 2009, any services which the Klehr Harrison Firm may have provided to Toll after that date are unlikely to have had any value to the estate.

**13.** This Court is fully cognizant that prior court approval is not required under nor relevant to the "substantial contribution" standard applicable to § 503(b). *See Bernstein & Bernstein, P.C. v. Bohm (In re Decarbo)*, 152 B.R. 44 (W.D.Pa.1993)(holding that bankruptcy court erred by applying improper legal standard in ruling on fee application submitted by attorneys for a creditor under 11 U.S.C. § 503(b)(4) because it relied upon Third Circuit case law requiring prior court approval for reimbursement of professionals' fees). However, the fact that Republic First Bank required the Debtors to seek court approval for reimbursement of its fees as a condition precedent to conducting comprehensive due diligence and negotiating a definitive DIP facility commitment whereas Toll did not, is relevant to the issues of: (i) whether Toll was acting primarily to serve his own interest; and (ii) whether he would have taken such actions absent an expectation of reimbursement from the bankruptcy estate.

Significantly, many of the entries on the invoice contained lumped tasks. For example, a time entry for 02/09/09 for 1.75 hours states: "review Carpenters Union commitment/blacklined term sheet/emails from and to S. Baker, J. Schwartz, B. Tierny and B. Toll/telephone calls with J. Schwartz and B. Toll/conference call with PNI."[14] Moreover, many of the entries lack detail. For example, an entry on 02/05/09 for 1.25 hours states: "telephone calls with D. Topkins, B. Tierney and B. Toll." Another entry on the same date for 1.5 hours states: "meeting with B. Tierney, S. Baker and S. Baker."[15] These deficiencies render it difficult for the Court to evaluate "the time, the nature, the ex-tent and the value" of the services of the Klehr, Harrison Firm.[16] *See In re Burgoyne, Inc.*, 2002 WL 31685730, at *3 (Bankr.E.D.Pa. Nov.4, 2002) (observing that lumping of activities in time entries has "long been disapproved" and that such lumping makes it problematic for the court in ruling on request for an allowed administrative expense for professional fees under § 503(b)(3) and § 503(b)(4) to determine "whether a finding of substantial benefit is warranted.").

In light of the deficiencies in the invoice which Toll has submitted with his Claim and bearing in mind the Court's determination as set forth above that the benefit which Toll conferred on the Debtors' es-

---

**14.** Other examples of entries containing lumped tasks include but are not limited to the following:

| Date | Description | Hours |
|---|---|---|
| 02/05/09 | review debtor's restated term loans term sheet and management incentive proposals/confer with J. Kurtzman/confer with M. Rittinger/prepare mandate letter and summary of terms and conditions for proposed DIP financing | 1.25 |
| 02/06/09 | telephone calls and letter to S. Baker and B. Tierney/telephone calls with B. Toll re: DIP loan issues | 1.75 |
| 02/06/09 | telephone calls with Borrower and investor group/comment on term sheet | 2.90 |
| 02/09/09 | office conference with R. Roisman and J. Kurtzman/telephone calls with working group/revise and distribute proposed term sheet | 1.50 |

Exhibit "A" to Claim. When multiple tasks are lumped into one entry, the Court cannot determine the time and, therefore, the value of the individual tasks contained in the entry.

**15.** Other examples of vague entries include the following:

| Date | Description | Hours |
|---|---|---|
| 02/12/09 | confer with J. Kurtzman and M. Rittinger | 0.50 |
| 02/13/09 | meeting with L. McMichael and K. Pappas | 1.25 |
| 02/16/09 | conference with J. Kurtzman, L. McMichael, et al. | 0.30 |

| Date | Description | Hours |
|---|---|---|
| 02/16/09 | telephone call with Al Ciardi | 0.25 |
| 02/16/09 | confer with J. Kurtzman and M. Rittinger | 0.75 |
| 02/19/09 | conference call with Inquirer/ telephone call with B. Toll | 0.75 |
| 02/25/09 | follow up with open issues/ review bankruptcy pleadings | 0.30 |
| 02/26/09 | telephone calls with J. Schwarts and B. Toll | 0.50 |
| 02/26/09 | review bankruptcy pleadings | 0.50 |
| 02/27/09 | confer with J. Kurtzman/telephone call to L. McMichael | 0.50 |
| 03/03/09 | conference call with Judge FitzSimon and counsel | 1.50 |
| 03/04/09 | emails from and to D. Abernathy/telephone call with C. Cummerford | 0.25 |
| 03/09/09 | attend meetings with bank group/telephone calls with B. Toll, B. Gross and J. Schwartz | 8.25 |

Exhibit "A" to the Claim. The lack of detail in these entries makes it impossible for the Court to determine whether the tasks performed therein related to Toll's proposed DIP loan, whether the time billed for the task was reasonable or excessive, and whether the task conferred any benefit on the Debtors' estates and their creditors.

**16.** There is a time entry on the invoice for 02/16/09 for 13.30 hours for "office conference with J. Kurtzman and Dilworth Paxson re: terms of proposed DIP Facility/draft credit agreement." The billable hourly rate for the attorney who performed these services is $375.00 per hour. The Court considers the time recorded in this entry to be excessive.

tates and their creditors occurred but in an amount substantially less than the $65,947.34 for which Toll is seeking compensation, the Court concludes that Toll's Claim shall be allowed (albeit imprecisely) in the reduced amount of $24,000. The Court concludes that this amount is "reasonable compensation" for the services which the Klehr, Harrison Firm rendered to Toll in connection with the DIP loan.

### SUMMARY

Based on the Court's conclusion that Toll conferred a substantial benefit on the Debtors' estates and their creditors, but that Toll's request for an allowed administrative expense in the amount of $65,947.34 is excessive and unreasonable, the Court shall grant Toll's Claim in the reduced amount of $24,000.00.

### ORDER

AND Now, upon consideration of the Administrative Claim Request of Bruce Toll Pursuant to 11 U.S.C. § 503(a) and (b) (the "Claim"), it is hereby ORDERED that the Claim is allowed in the reduced amount of $24,000.00.